678 So.2d 410 (1996)
STATE of Florida, Petitioner,
v.
Randall PINDER, Respondent.
No. 96-0946.
District Court of Appeal of Florida, Fourth District.
July 22, 1996.
*411 Robert A. Butterworth, Attorney General, Tallahassee; and Sharon A. Wood, Assistant Attorney General, West Palm Beach, for petitioner.
Dawn S. Wynn, Assistant County Attorney, West Palm Beach, for Palm Beach County Victim Services. David A. Roth of Roth & Duncan, P.A., West Palm Beach, for Victim-V.P.
David W. Olson, West Palm Beach, for respondent.
GROSS, Judge.
This is a petition for writ of certiorari from a trial court order granting a criminal defendant's motion to compel and requiring an in camera hearing directed at the testimony and file of victim services counselors. Because neither due process nor the Sixth Amendment require disclosure of communications protected by section 90.5035, Florida Statutes (1995), we grant the writ and quash the order under review.
Randall Pinder is charged with attempted first degree murder, armed kidnapping, armed burglary and sexual battery. The factual basis of the charges, as contained in the probable cause affidavit, is that Pinder unlawfully entered the victim's[1] home, sexually assaulted her at knifepoint, and drove her at gunpoint to a drainage ditch, where he cut her throat and shot her in the head. At her deposition, the victim said that she had memory problems as a result of the shooting, but remembered the incident in detail. She answered numerous questions posed by Pinder's attorney.[2] She testified that she had discussed the attack with her mother, siblings and daughter. The victim refused to discuss what she had said to her sexual assault counselors. Defense counsel deposed Vilma Sosa and Betty Butler, counselors with Palm Beach County Victim Services. Ms. Sosa described her general duties:
If I'm the on-call counselor and I go out on the case, I would be called by either Crisis Line or the police department. And I would meet the victim at the hospital and be with her or him through the entire procedure of collecting of evidence, explaining to them what's going on.
If need,[sic] get ahold of family members, go back with the victim to the police department to be with them during the taped interview, talk to them about possible venereal diseases, assist them in getting an appointment with their physician or follow-up.
Give them information regarding what possible feelings of agitation and concern that they're going to be sensing ... explain to them a little bit about the court system, explain to them procedures of what depositions are, court matters, and so *412 forth. And generally [be] there to listen to them.
In response to questions concerning the victim's consultation with them or whether their office had a file on the victim, both counselors asserted the sexual assault counselor-victim privilege under section 90.5035, Florida Statutes (1995).[3]
Pinder moved to compel the two counselors to respond to questions concerning statements made by the victim about the incident, or alternatively for the court to conduct an in camera hearing to question the counselors or inspect their files. The trial court ordered Palm Beach County Victim Services to make its file pertaining to the victim available to the court for an in camera inspection. The court also required the two counselors to separately make themselves available to the court for an in camera hearing to respond to the court's "inquiries regarding statements made to them by [the victim]." The court's order noted that the purpose of the in camera proceeding was not to circumvent the section 90.5035 privilege, but to determine the existence of "exculpatory information as to the defendant herein which may outweigh any interest of Victim Services or [the victim] in preserving the secrecy of any such information." From this order, the state seeks certiorari review.
Pinder defends the trial court's order on due process grounds. Aside from the general reference to Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), Pinder mainly relies on Advisory Opinion to the House of Representatives, 469 A.2d 1161 (R.I.1983). However, both of these cases predate Pennsylvania v. Ritchie, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987), which is where legal analysis in this case necessarily begins.
The defendant in Ritchie was charged with sexually assaulting his daughter. Before trial, Ritchie subpoenaed the files of Pennsylvania's Children and Youth Services (CYS), the state agency charged with investigating child abuse. A statute provided that the agency's files were confidential. However, the privilege against disclosure was not absolute; it was subject to eleven statutory exceptions, including one which allowed disclosure to a "court of competent jurisdiction pursuant to a court order." Id. at 43-44, 107 S.Ct. at 994. After a limited in camera hearing, the trial judge denied a motion to compel disclosure of the agency's records. Ritchie went to trial and was convicted. On appeal, Ritchie argued that nondisclosure of the state agency's file interfered with his confrontation rights under the Sixth Amendment of the United States Constitution. The Pennsylvania *413 Supreme Court agreed with Ritchie, relying in part on Davis, where the Supreme Court held that a trial judge's prohibition against questioning a witness about his juvenile criminal record violated the Confrontation Clause.
A plurality of the Supreme Court refused to apply a broad reading of Davis. The plurality characterized confrontation as a trial right, satisfied by a defendant facing the state's witnesses and by defense counsel's cross examination of them.
If we were to accept this broad interpretation of Davis, the effect would be to transform the Confrontation Clause into a constitutionally compelled rule of pretrial discovery. Nothing in the case law supports such a view. The opinions of this Court show that the right to confrontation is a trial right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination. The ability to question adverse witnesses, however, does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony. Normally the right to confront one's accusers is satisfied if defense counsel receives wide latitude at trial to question witnesses. In short, the Confrontation Clause only guarantees "an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."
Pennsylvania v. Ritchie, 480 U.S. at 52-53, 107 S.Ct. at 999 (citations omitted).
The Supreme Court also considered Ritchie's argument that nondisclosure of the agency's file violated his Sixth Amendment guarantee of compulsory process. Without delineating the scope of any Sixth Amendment protection, a majority in Ritchie concluded that the claim was best analyzed under the Due Process Clause of the Fourteenth Amendment. Id. at 56, 107 S.Ct. at 1001. Due process requires the government to turn over evidence in its possession favorable to the accused and material to guilt or punishment. Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Id. The Supreme Court concluded that, under the statute at issue, Ritchie was entitled to have the trial judge review the CYS file "to determine whether it contain[ed] information that probably would have changed the outcome of his trial." Id. at 58, 107 S.Ct. at 1002. Citing the Pennsylvania statute that provides an unqualified privilege for communications between sexual assault victims and their counselors, the Court noted that it was expressing "no opinion on whether the result in this case would have been different if the statute had protected the CYS files from disclosure to anyone, including law enforcement and judicial personnel." Id. n. 14. Rather, the statutory privilege at issue in Ritchie was not absolute, but only qualified. One statutory exception to disclosure expressly contemplated that CYS files might be used in judicial proceedings.
After Ritchie, the Supreme Court has declined several opportunities to rule on the constitutionality of an absolute privilege for communications between a rape victim and a crisis counselor.[4] Nor has the court elaborated on the constitutional analysis contained in that opinion.[5] Since the decision in Ritchie, state courts have generally upheld absolute sexual assault counselor/victim privileges in the face of defendants' pretrial claims of constitutional entitlement to privileged information. *414 See People v. Foggy, 121 Ill.2d 337, 118 Ill.Dec. 18, 521 N.E.2d 86, cert. denied, 486 U.S. 1047, 108 S.Ct. 2044, 100 L.Ed.2d 628 (1988); Commonwealth v. Wilson, 529 Pa. 268, 602 A.2d 1290, cert. denied, 504 U.S. 977, 112 S.Ct. 2952, 119 L.Ed.2d 574 (1992); State v. J.G., 261 N.J.Super. 409, 619 A.2d 232 (N.J.Super.Ct.App.Div.), cert. denied, 133 N.J. 436, 627 A.2d 1142 (1993)(victim counselor); People v. Stanaway, 446 Mich. 643, 521 N.W.2d 557 (1994), cert. denied, ___ U.S. ___, 115 S.Ct. 923, 130 L.Ed.2d 802 (1995); see People v. District Court In and For City and County of Denver, 719 P.2d 722 (Colo. 1986) (decided prior to Ritchie). At least 23 states have enacted victim-counselor privileges. See Zorza, Recognizing and Protecting the Privacy and Confidentiality Needs of Battered Women, 29 Fam. L.Q. 273, 296 n.131 (1995). Some statutes create only qualified privileges, in that they permit disclosure of communications under certain circumstances. For example, Washington allows the discovery of a rape crisis center's records if certain conditions are met, including a defendant's factual showing of a need for the information and a court's determination that the probative value of the records is outweighed by the victim's privacy interest. State v. Kalakosky, 121 Wash.2d 525, 852 P.2d 1064 (1993).
Florida is among the sixteen states to have enacted an absolute sexual assault counselor-victim privilege, in the sense that nothing in the statute authorizes the use of a communication within the privilege for any purpose. See Warren, She's Gotta Have It Now: A Qualified Rape Crisis Counselor-Victim Privilege, 17 Cardozo L.Rev. 141, 146 (1995). Section 90.5035 contains no exceptions or limitations, no balancing test for its application. The Florida senate staff analysis of the privilege supports the conclusion that the legislature intended that it be absolute:
There are no exceptions to the privilege conferred by the bill. Compare s. 90.503(4), F.S., providing that there is no psychotherapist-patient privilege regarding commitment proceedings, court-ordered examinations, and communications relevant to the individual's emotional condition in any proceedings in which he relies on the condition as an element of his claim or defense.
Staff of Fla. S. Comm. on Judiciary-Civil, SB 568 (1983) Staff Analysis 2 (rev. April 27, 1983)(available at Fla. Dep't of State, Div. of Archives, ser. 18, carton 1413, Tallahassee, Fla.).[6] Of the six relationship-based privileges contained in chapter 90, only section 90.5035 and the clergyman's privilege contain no exceptions to their application. See § 90.505, Fla. Stat. (1995).
As analyzed in Ritchie, neither the Sixth Amendment nor due process compels the in camera disclosure ordered in this case. There is no general constitutional right to discovery in a criminal case. Weatherford v. Bursey, 429 U.S. 545, 559, 97 S.Ct. 837, 845-46, 51 L.Ed.2d 30, 42 (1977). The precise due process approach used in Pennsylvania v. Ritchie was based on the government's obligation to turn over evidence in its possession which is favorable to the accused and material to guilt under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Pennsylvania v. Ritchie, 480 U.S. at 57, 107 S.Ct. at 1001; see United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). The Ritchie due process analysis necessarily assumed that the Pennsylvania CYS was a government agency subject to the obligation to disclose Brady material. Unlike the state agency in Ritchie, the counselors in this case do not investigate potential criminal conduct. There was no showing that they assist the prosecution by providing information or offering suggestions. The counselors are not agents of the state within the contemplation of Brady and that aspect of due process does not compel disclosure of records or information which are shielded from all eyes, state and defense. Goldsmith v. State, 337 Md. 112, 651 A.2d 866 (1995); People v. Stanaway, 521 N.W.2d at 569; cf. Pennsylvania v. Ritchie, 480 U.S. at 57-58, 107 S.Ct. at 1001. This case involves precisely the type of unqualified privilege about *415 which the Supreme Court expressed no opinion in Ritchie.
This case is properly evaluated under the more general concept of due processthat the accused has a right to a fair opportunity to defend against the state's accusations. Chambers v. Mississippi, 410 U.S. 284, 294, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973). Application of the constitutional right involves weighing the importance of preserving the statutory privilege against the "inroads of such a privilege on the fair administration of criminal justice." United States v. Nixon, 418 U.S. 683, 711-12, 94 S.Ct. 3090, 3109, 41 L.Ed.2d 1039 (1974). Generally, the objective of most evidentiary rules is to enhance the truth seeking process. McCormick on Evidence § 72 (4th ed.1992). Legislatively created rules of privilege shield potential sources of evidence to foster relationships deemed socially valuable. Id. Due process requires that these competing interests be examined and weighed. The Florida Supreme Court, in analyzing a defendant's Sixth Amendment attack on the attorney client privilege, has used a balancing test similar to that required by a due process approach. Mills v. State, 476 So.2d 172, 176 (Fla.1985), cert. denied, 475 U.S. 1031, 106 S.Ct. 1241, 89 L.Ed.2d 349 (1986).
The need for and function of sexual assault counselors and rape crisis centers has been expressed by the Pennsylvania supreme court:
Sexual assault counselors serve an ... important function for the rape victim. Extensive research has been conducted documenting the severe psychological, emotional, and social difficulties suffered by rape victims, which cause a condition known as "rape trauma syndrome". The devastating effects of this condition create a compelling need for a confidential counseling relationship to enable the victim to cope with the trauma. It is generally recognized that rape traumatizes its victims to a degree far beyond that experienced by victims of other crimes. Rape crisis centers have been developed nationwide to help victims of this most degrading offense to recover from its debilitating effects.
Rape crisis centers are service facilities staffed with counselors extensively trained in crisis counseling. These counselors provide victims with much needed physical, psychological and social support during the recovery period.... At the onset of counseling the victim is informed that her communications will be confidential, and her willingness to disclose information quite obviously is based upon that expectation.... If that confidentiality is removed, that trust is severely undermined, and the maximum therapeutic benefit is lost. The inability of the crisis center to achieve its goals is detrimental not only to the victim but also to society, whose interest in the report and prosecution of sexual assault crimes is furthered by the emotional and physical well-being of the victim. Commonwealth v. Wilson, 529 Pa. at 276-77, 602 A.2d at 1295. Although counseling support may assist victims in deciding to report an attack, the role of the counselor is not to investigate a crime. Rather, the counseling process allows victims to talk in detail about what happened, to express their most personal thoughts and feelings, so that they come to resolve and understand their reactions to the event. See People v. Foggy, 118 Ill.Dec. at 23, 521 N.E.2d at 91. Section 90.5035 fosters the state's interest in the well being and recovery of the victims by protecting the relationship that is designed to help them.
Disclosure of material protected by section 90.5035 undermines the reasons for the privilege. The privacy of communications makes the protected relationship meaningful and effective. Routine disclosure of counseling confidences would discourage those in need from seeking help or from using counseling to its maximum benefit. Even in camera disclosure to the trial judge (and to court reporters, appellate courts and their staff) "intrudes on the rights of the victim and dilutes the statutory privilege." See State v. J.G., 619 A.2d at 237; Commonwealth v. Kennedy, 413 Pa.Super. 95, 604 A.2d 1036, 1047 (1992).
Given the function of counseling, it is improbable that an in camera inspection of counseling records would uncover information *416 critical to the defense, irreplaceable by other means. See People v. Foggy, 118 Ill. Dec. at 23, 521 N.E.2d at 91. Florida Rule of Criminal Procedure 3.220 provides for extensive discovery, and allows a defendant to take depositions of persons with information relevant to the offense charged, including the victim.[7] A defendant has access to unprivileged statements made by the victim to the police, her family or other witnesses. Unlike the privilege for juvenile criminal records in Davis, section 90.5035 will not typically shield a significant and irreplaceable means of impeaching the chief prosecution witness.
The social importance of the confidential relationship and the availability of broad discovery rights weigh heavily against disclosure of section 90.5035 matters. This view draws support from Mills v. State. There the Florida supreme court considered a defendant's claim that application of the attorney-client privilege to shield statements made by an accomplice violated his Sixth Amendment rights under Davis. The court distinguished Davis by observing that the attorney-client privilege was of "broader and deeper significance" than a statute relating to confidential juvenile records. The court concluded that the "attorney-client privilege weighs much more heavily against a defendant's cross-examination right than did the statutory exclusion at issue in Davis." 476 So.2d at 176. Holding that there was no Sixth Amendment violation, the court observed that the defendant was able to significantly impeach the accomplice by other means. Even though it was decided prior to Ritchie, Mills employs the same type of balancing approach required by a due process analysis. The legislature has accorded the section 90.5035 privilege a broad and deep significance similar to the attorney-client privilege; a defendant has other pretrial tools to examine a victim's statements. For these reasons, Mills supports the conclusion that, under a Sixth Amendment analysis, disclosure is required only under rare and compelling circumstances.
Finally, Pinder has made no factual showing sufficient to pierce the privilege and justify an in camera inspection. In Ritchie, which involved only a qualified privilege, the Supreme Court recognized the necessity of a defendant making a factual showing before being entitled to an in camera review of the CYS files:
Ritchie, of course, may not require the trial court to search through the CYS file without first establishing a basis for his claim that it contains material evidence. See United States v. Valenzuela-Bernal, 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193(1982)("He must at least make some plausible showing of how their testimony would have been both material and favorable to his defense") ...
Pennsylvania v. Ritchie, 480 U.S. at 58 n. 15, 107 S.Ct. at 1002 n. 15. It follows that to overcome an absolute privilege, a defendant would have an even higher burden of proof than that suggested in Ritchie. Most courts that have considered this issue have recognized that the absence of a factual showing, set against the statutory policy of confidentiality, is a reason for denying in camera review. See People v. Foggy, 118 Ill.Dec. at 24, 521 N.E.2d at 92; People v. Stanaway, 521 N.W.2d at 577-78; Commonwealth v. Bishop, 416 Mass. 169, 617 N.E.2d 990, 995 (1993); Commonwealth v. Two Juveniles, 397 Mass. 261, 491 N.E.2d 234 (1986). In this case, Pinder has alleged only that the victim has talked to the counselors. Under these circumstances, an in camera review would be nothing more than a fishing expedition through the victim's privileged records. To require disclosure in this case would be to require it in every case, a result which would eviscerate the effectiveness of the privilege. As the Supreme Court recently recognized when defining the scope of a psychotherapist privilege,
[I]f the purpose of the privilege is to be served, the participants in the confidential conversation "must be able to predict with some degree of certainty whether particular discussions will be protected. An uncertain *417 privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all."
Jaffee v. Redmond, ___ U.S. ___, ___, 116 S.Ct. 1923, 1932, 135 L.Ed.2d 337 (1996) (quoting Upjohn Co. v. United States, 449 U.S. 383, 393, 101 S.Ct. 677, 684, 66 L.Ed.2d 584 (1981)).
In light of the policy values behind the privilege, the dangers of lenient disclosure and the availability of broad pretrial discovery, a defendant must satisfy a stringent test to justify in camera disclosure of privileged matters. To obtain in camera review of confidential communications or records under section 90.5035, a defendant must first establish a reasonable probability that the privileged matters contain material information necessary to his defense. See People v. Stanaway, 521 N.W.2d at 574. Only then may a trial court conduct an in camera hearing to determine if, in fact, the privileged communications contain such information.
Pinder has failed to make the requisite factual showing. This is not a case where an in camera hearing is required to determine if the privilege applies. Cf. State v. Young, 654 So.2d 962, 963 (Fla. 3rd DCA), review denied, 661 So.2d 825 (1995) ("An in camera hearing is a proper procedure to determine if the witness' testimony is protected under the attorney-client privilege."). Pinder does not seek to compel disclosure of testimony that falls outside the privilege. The trial court's order requires the counselors to produce their file and recount the victim's statements, all of which are protected by section 90.5035. We grant the state's petition for writ of certiorari, and quash the trial court's order of March 1, 1996.
DELL, J., concurs.
FARMER, J., dissents with opinion.
FARMER, Judge, dissenting.
Instead of deciding only the issue actually presented to us, the majority reaches out to decide an issue which is not yet ripe. The result of its decision is capable of yielding a deprivation of due processthe denial to a criminal defendant of access to arguably exculpatory evidence. Because that decision is unnecessary, I am compelled to dissent.
The order we review is an order merely requiring that in a criminal case a third party submit to in camera examination such relevant evidence as the party may have. Plainly the order does not require the disclosure of such evidence to defense counsel or, for that matter, anyone other than the trial judge. Indeed the very purpose of the in camera production is for the trial judge to determine whether such evidence should be disclosed to defense counsel.
If the trial judge should decide that nothing in the evidence is exculpatory, that will be the end of the matter. No communications between the victim of this terrible crime and her counsellor will have been published, and the privilege claimed by the witness will have been vindicated. If the trial judge should later rule that something should be disclosed to defendant and his counsel in spite of the claimed privilege, there will be time enough then to allow for review in this court of that ruling. The urgency for us to confront the nature and extent of the statutory privilege as against hypothetical revelations is a mystery to me.
I also note that in the most pertinent United States Supreme Court opinion on the issue, which is discussed in the majority's opinion, that Court ruled that similar evidence should be produced for in camera examination by the trial judge in spite of the similar privilege claimed in that case. Pennsylvania v. Ritchie, 480 U.S. 39, 58, 107 S.Ct. 989, 1002, 94 L.Ed.2d 40 (1987) (defendant entitled to have file of sexual abuse counsellor examined by trial judge in camera for existence of exculpatory evidence). I see no measurable difference between the privilege asserted in Ritchie and that asserted here for purposes of in camera disclosure.
The holding in Ritchie impels me to conclude that mere production in camera is the functional equivalent of nondisclosure. Moreover, I do not understand how occasional in camera production of evidence asserted to be protected by the privilege will have any effect on the purposes for protecting it with the privilege in the first place. There is *418 certainly no evidence in this record that in camera disclosure will cause future victims of sexual battery to be less candid with their counsellors. Nor is such a conclusion shown to be so widely held by those expert in the art that courts should accept the fact a priori and without any evidentiary basis.
Although Ritchie held that the Confrontation Clause does not give a criminal defendant pretrial discovery rights, it expressly avoided deciding whether the Due Process Clause embraces a right to exculpatory evidence that is the subject of a sexual abuse counsellor privilege. If I thought it necessary in the posture of today's case to confront that issue, I do not believe that I could agree with the analysis of the majority. Because it is plainly unnecessary now to reach that question, however, I avoid entering into the required analysis and rest my decision on Ritchie as to the single question that needs to be decided.
NOTES
[1] By use of the term "victim" in this opinion, we are not expressing any view as to the guilt of the defendant in the case below. We use the term as it is used in section 90.5035(1)(c), Florida Statutes (1995), to include a person who consults a counselor concerning an "alleged sexual assault."
[2] The transcript of the victim's January 11, 1996 deposition is 122 pages long.
[3] 90.5035 Sexual assault counselor-victim privilege.

(1) For purposes of this section:
(a) A "rape crisis center" is any public or private agency that offers assistance to victims of sexual assault or sexual battery and their families.
(b) A "sexual assault counselor" is any employee of a rape crisis center whose primary purpose is the rendering of advice, counseling, or assistance to victims of sexual assault or sexual battery.
(c) A "victim" is a person who consults a sexual assault counselor for the purpose of securing advice, counseling, or assistance concerning a mental, physical, or emotional condition caused by a sexual assault or sexual battery, an alleged sexual assault or sexual battery, or an attempted sexual assault or sexual battery.
(d) A communication between a sexual assault counselor and a victim is "confidential" if it is not intended to be disclosed to third persons other than:
1. Those persons present to further the interest of the victim in the consultation, examination, or interview.
2. Those persons necessary for the transmission of the communication.
3. Those persons to whom disclosure is reasonably necessary to accomplish the purposes for which the sexual assault counselor is consulted.
(2) A victim has a privilege to refuse to disclose, and to prevent any other person from disclosing, a confidential communication made by the victim to a sexual assault counselor or any record made in the course of advising, counseling, or assisting the victim. Such confidential communication or record may be disclosed only with the prior written consent of the victim. This privilege includes any advice given by the sexual assault counselor in the course of the relationship.
(3) The privilege may be claimed by:
(a) The victim or the victim's attorney on his or her behalf.
(b) A guardian or conservator of the victim.
(c) The personal representative of a deceased victim.
(d) The sexual assault counselor, but only on behalf of the victim. The authority of a sexual assault counselor to claim the privilege is presumed in the absence of evidence to the contrary.
[4] The Supreme Court has denied certiorari in People v. Foggy, 121 Ill.2d 337, 118 Ill.Dec. 18, 521 N.E.2d 86, cert. denied, 486 U.S. 1047, 108 S.Ct. 2044, 100 L.Ed.2d 628 (1988), and in Commonwealth v. Wilson, 529 Pa. 268, 602 A.2d 1290, cert. denied, 504 U.S. 977, 112 S.Ct. 2952, 119 L.Ed.2d 574 (1992). The latter case held that Pennsylvania's absolute statutory privilege prevented any disclosure of protected information.
[5] Coy v. Iowa, 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988), held that the placement of a screen between a defendant and child sexual assault victims during their testimony at trial violated a defendant's right under the Confrontation Clause of the Sixth Amendment. Coy is consistent with the Ritchie plurality's characterization of the confrontation clause as a trial right.
[6] "Although not determinative of legislative intent, staff analyses are one touchstone of the collective legislative will." Sun Bank/South Florida v. Baker, 632 So.2d 669 (Fla. 4th DCA 1994).
[7] In many jurisdictions, a criminal defendant is not allowed to take discovery depositions of potential witnesses. See Annotation, Accused's Right to Depose Prospective Witnesses Before Trial in State Court, 2 A.L.R.4th 704 (1980).