712 So.2d 1252 (1998)
Karen GERHEISER, Petitioner,
v.
Sean STEPHENS and The State of Florida, Respondents.
No. 98-1109.
District Court of Appeal of Florida, Fourth District.
July 8, 1998.
*1253 Ronald S. Chapman, West Palm Beach, for Petitioner.
Robert A. Butterworth, Attorney General, Tallahassee, and Consuelo Maingot, Assistant Attorney General, Fort Lauderdale, for Respondent State of Florida.
PER CURIAM.
The petitioner, Karen Gerheiser, seeks a writ of certiorari quashing the lower court's order requiring her to give in camera testimony regarding communications she had with an attorney.
Gerheiser's son, Ronald Knight, and a codefendant, Sean Stephens, were charged with first degree murder, robbery and grand theft. Knight was convicted after a jury trial, and Stephens pled guilty to second degree murder, robbery and grand theft. In May 1997, Stephens filed a motion pursuant to Florida Rule of Criminal Procedure 3.850, alleging that his trial attorney, V. Ted Brabham, rendered ineffective assistance of counsel. Stephens alleged, inter alia, that Brabham labored under a conflict of interest.
In support of this claim, Stephens submitted an affidavit from Gerheiser, stating that after Knight's arrest, she met with Brabham about representing Knight, who was being held at the jail. Gerheiser's affidavit asserts that she and Brabham discussed his fee and other matters that she expected to remain confidential, including possible defenses and strategies. She subsequently advised Brabham that she could not afford his fee, and Brabham ended up representing Stephens instead.
Stephens' 3.850 motion alleged that Brabham obtained privileged and confidential information about Knight that he would have been obligated to use against Knight had Stephens' case gone to trial. Stephens alleged that he wanted to go to trial, that he had meritorious defenses that Brabham failed to pursue, and that Brabham pushed Stephens into pleading guilty based in part on the conflict.
*1254 The trial court summarily denied the 3.850 motion, and on appeal, we remanded for an evidentiary hearing on the conflict issue. At the evidentiary hearing, Stephens' counsel sought to call Gerheiser to testify about her conversation with Brabham. Gerheiser's attorney objected, asserting the attorney-client privilege on the ground that Gerheiser was acting as an agent for her son when she met with Brabham. Stephens' attorney indicated that she wished to ask Gerheiser general questions as to whether she conveyed privileged information to Brabham, without disclosing what was discussed. Stephens' counsel advised the court that in securing Gerheiser's affidavit, she had been careful not to ask Gerheiser anything that would be considered privileged and that Knight's appellate attorney had reviewed the affidavit before Gerheiser signed it. Gerheiser's counsel expressed concern that any inquiry into Gerheiser's meeting with Brabham would open the door to the entire conversation. The State took the position that the conversation was not covered by the attorney-client privilege (an argument it did not pursue before this court).
The trial court asked Gerheiser some preliminary questions about the nature and purpose of her meeting with Brabham. The court then concluded that Gerheiser was acting as her son's agent and that her conversation with Brabham was therefore privileged. At that point, the State requested that the court conduct an in camera hearing to inquire into the substance of the communications between Gerheiser and Brabham. Gerheiser's counsel objected. Stephens took the position that the trial court did not need to know the substance of the communications in order to find that Brabham rendered ineffective assistance of counsel based on a conflict of interest. Rather, it was Stephens' contention that Gerheiser's affidavit and testimony thus far were enough to demonstrate the existence of a privileged and confidential relationship, which, he claimed, precluded Brabham from taking Stephens' case to trial.
The trial court reserved ruling on the motion for in camera testimony until after hearing Brabham's testimony. Brabham testified that nothing confidential outside of his fee was discussed at the meeting with Gerheiser and that he did not learn anything from her about Knight that he had not already read in the newspapers. The state renewed its motion for an in camera examination, arguing that without such an examination the State would be prejudiced in defending against Stephens' conflict of interest claim.
The trial court granted the motion for an in camera examination of Gerheiser, who then filed this petition for writ of certiorari.

Applicability of attorney-client privilege
As a preliminary matter, we agree with the trial court that Gerheiser's conversation with Brabham was protected by the attorney-client privilege, as she was acting as an agent for her son for the purpose of securing legal representation for him. In responding to the petition for certiorari, the State did not argue to the contrary. The fact that Brabham was not retained by Gerheiser is immaterial. See Dean v. Dean, 607 So.2d 494 (Fla. 4th DCA 1992), rev. dismissed, 618 So.2d 208 (Fla.1993) (existence of attorney-client privilege does not depend on whether client actually hires attorney; it is enough if client consults attorney with a view to employing attorney professionally).
Section 90.502(1), Florida Statutes, provides that:
A communication between lawyer and client is "confidential" if it is not intended to be disclosed to third persons other than:
1. Those to whom disclosure is in furtherance of the rendition of legal services to the client.
2. Those reasonably necessary for the transmission of the communication.
§ 90.502(1)(c), Fla. Stat. (1995). Gerheiser essentially acted as the messenger for her son, who was incarcerated in the jail and who asked her to find him an attorney. As such, she was "reasonably necessary for the transmission of the communication."
We believe this conclusion is consistent with cases holding that the attorney-client privilege "extends to the necessary intermediaries and agents through whom such communications are made." State v. Kociolek, 23 N.J. 400, 129 A.2d 417, 424 (1957); City and County of San Francisco v. *1255 Superior Court, 37 Cal.2d 227, 231 P.2d 26, 31 (1951) (en banc). As stated in Wigmore on Evidence § 2317, "A communication, then, by any form of agency employed or set in motion by the client is within the privilege. This of course includes communications through an interpreter, and also communications through a messenger or any other agent of transmission, as well as communications originating with the client's agent and made to the attorney." 8 Wigmore, Evidence § 2317, at 618 (McNaughton rev.1961) (footnotes omitted; emphasis in original). We also agree with the trial court's conclusion that Gerheiser had standing to assert the privilege on her son's behalf at the evidentiary hearing.

Propriety of ordering an in camera examination
Both Gerheiser and the State rely on State v. Pinder, 678 So.2d 410 (Fla. 4th DCA 1996), as setting forth the standard for determining whether an in camera disclosure of privileged communications is permissible. (Stephens, although given an opportunity to file a response to Gerheiser's petition, declined to do so.) In Pinder, a defendant charged with sexual assault moved for an in camera review of the victim's statements to sexual assault counselors, on the ground that such statements might contain information favorable to the defendant. The trial court granted the motion, and this court granted a writ of certiorari and quashed the order.
Noting the importance of the sexual assault counselor-victim privilege in encouraging victims to seek assistance, we stated that "[e]ven in camera disclosure to the trial judge (and to court reporters, appellate courts and their staff) `intrudes on the rights of the victim and dilutes the statutory privilege.' " Id. at 415 (citations omitted). Accordingly, we held:
In light of the policy values behind the privilege, the dangers of lenient disclosure and the availability of broad pretrial discovery, a defendant must satisfy a stringent test to justify in camera disclosure of privileged matters. To obtain in camera review of confidential communications or records under section 90.5035 [codifying the sexual assault counselor-victim privilege], a defendant must first establish a reasonable probability that the privileged matters contain material information necessary to his defense. ... Only then may a trial court conduct an in camera hearing to determine if, in fact, the privileged communications contain such information.
Id. at 417 (emphasis added).
We conclude that under the unique circumstances presented here, the State has established a reasonable probability that the privileged matters contain material information necessary to defend against Stephens' claim of ineffective assistance of counsel created by Brabham's conflict of interest. Under Cuyler v. Sullivan, 446 U.S. 335, 348, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), Stephens must prove that his attorney labored under an actual conflict of interest that adversely affected his attorney's performance. See also Gorby v. State, 630 So.2d 544 (Fla.1993), cert. denied, 513 U.S. 828, 115 S.Ct. 99 (1994). As noted, Stephens asserts that he has already met his burden, based on Gerheiser's affidavit and testimony that Brabham had a "terrible conflict" because they engaged in confidential communications during which they discussed possible defenses and strategies. The trial court has not yet ruled whether Stephens' evidence is sufficient to prove his claim, and nothing we say herein should be interpreted as holding that his evidence is in fact sufficient. However, by agreeing to execute an affidavit for Stephens in support of his conflict claim, Gerheiser herself created a situation where the State has demonstrated a need to know what was discussed. Here, unlike in Pinder, the person holding the privilege has voluntarily described the nature of the conversation with the attorney but, at the same time, has asserted the privilegein effect using the privilege as a sword instead of a shield. And here, unlike in Pinder, the information is not being sought as part of a fishing expedition. See Pinder, 678 So.2d at 416. By volunteering information that might be deemed sufficient to prove Stephens' claim, Gerheiser has left the State with no choice but to inquire into the content of the communications, in order to rebut Gerheiser's testimony. As such, the State has demonstrated *1256 a reasonable probability that the privileged matters contain material information necessary to its defense. Accordingly, the petition for a writ of certiorari is denied.
GUNTHER, WARNER and SHAHOOD, JJ., concur.