DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**LAS OLAS RIVER HOUSE CONDOMINIUM ASSOCIATION, INC., THE CONTINENTAL GROUP, INC., JOHN QUAINTANCE, JEROME SCHECHTER**, and **ARMINDA FIGUEROA,**
Petitioners,

v.

**LORH, LLC, SANDY ROBERT LEVY, CPA, PL, D/B/A CHOICE REALTY**, and **SANDY ROBERT LEVY,**
Respondents.

No. 4D15-2289

[December 9, 2015]

Petition for writ of certiorari to the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Michael L. Gates, Judge; L.T. Case No. CACE 13-012950-12.

Daniel M. Schwarz and Scott A. Cole of Cole, Scott & Kissane, P.A., Miami, for petitioners.

Marc A. Silverman of Frank, Weinberg & Black, P.L., Plantation, for respondents.

PER CURIAM.

A condominium association, the firm it retained to manage the condominium property, and officers of its board of directors ("Petitioners") seek a writ of certiorari to quash an order compelling them to produce documents over their assertion of the attorney-client privilege. Petitioners argue the trial court departed from the essential requirements of the law resulting in irreparable injury by ordering production of documents without conducting an *in camera* inspection. We agree and grant the petition.

Petitioners are among the defendants in a lawsuit brought by the corporate owner of two commercial units in the condominium, its corporate lessee, and the individual, Levy, who is the authorized representative of both corporate plaintiffs. The suit was brought after years of contention between Levy and the condominium association,

during which he repeatedly threatened to sue the association and its directors and agents. In the course of discovery, plaintiffs propounded requests for production of communications mentioning any of them, during the five years before the complaint was filed, between the defendant served with the request, and either (1) the attorney who served as the association's general counsel during this period, or (2) the attorney whom the association retained during this period to advise it concerning Levy's repeated threats to sue. Petitioners filed privilege logs asserting the attorney-client privilege.

Following a hearing, the trial court compelled the production of many such documents based on the plaintiffs' argument that the privilege was waived because the documents were received by, or copied to, third parties: either the association's community association manager, his immediate supervisor, or both. These two individuals were employees of the association's property management company, which in turn acted as the association's agent pursuant to a written management contract. Petitioners argued there was no waiver of the privilege because the individuals were agents of the association whose contractual duties required them to communicate with the association's counsel on the association's behalf. They explained to the trial court that an association's property manager keeps the association's counsel informed of day-to-day events precipitating the need for legal services, and disseminates counsel's communications to the board, acting as the point person for counsel to deal with on behalf of the association. The trial court—without an *in camera* inspection of the documents, which Petitioners had brought to the hearing for that purpose—rejected that argument and found the privilege was waived because the two individuals were not "employees" of the association within the meaning of *Southern Bell Telephone & Telegraph Co. v. Deason*, 632 So. 2d 1377 (Fla. 1994) [hereinafter *Deason*] (adopting a subject-matter test to determine whether corporate communications with counsel are privileged).

The trial court also found that the privilege log descriptions of the documents were insufficient to assist it in determining whether the privilege applied. Most documents were described, for example, as "E-mail correspondence from counsel regarding condominium association representation."

Under our Evidence Code, "[a] client has a privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of **confidential** communications when such other person learned of the communications because they were made in the rendition of legal services to the client." § 90.502(2), Fla. Stat. (2014) (emphasis added).

2

A communication between lawyer and client is "confidential" if it is not intended to be disclosed to third persons other than:

1. Those to whom disclosure is in furtherance of the rendition of legal services to the client.

2. Those reasonably necessary for the transmission of the communication.

§ 90.502(1)(c), Fla. Stat. (2014). The second exception applies to agents of the client—for example, when a family member acts on behalf of an incapacitated relative, *Witte v. Witte*, 126 So. 3d 1076 (Fla. 4th DCA 2012), or when a messenger is needed for a client to contact counsel, *Gerheiser v. Stephens*, 712 So. 2d 1252 (Fla. 4th DCA 1998).

"A communication, then, by *any form of agency* employed or set in motion by the client is within the privilege. This of course includes communications through an *interpreter,* and also communications *through a messenger* or any other *agent of transmission,* as well as communications *originating with the client's agent* and made to the attorney."

*Id.* at 1255 (quoting 8 Wigmore, Evidence § 2317, at 618 (McNaughton rev. 1961) (footnotes omitted)).

A corporation, of course, acts only through its agents. In *Deason*, the Florida Supreme Court considered "what constitutes a confidential communication in the corporate context." 632 So. 2d at 1382. Among the items at issue were statements made by company employees to the company's counsel. *Id.* at 1381. The court noted that when the attorney-client privilege is applied to corporations, considerations are different, as compared to when the privilege is applied to natural persons: "First, a corporation can only act through its agents, whereas a natural person can seek legal advice and then directly act (or not act) upon that advice. Second, a corporation relies on its attorney for business advice more than the natural person." *Id.* at 1383. The proper standard must balance the policy of encouraging corporations to seek legal advice, and preventing them from using their attorneys as shields to cloak information from discovery. *Id.*

The *Deason* court set forth a five-part test for determining whether a corporation's communications are attorney-client privileged:

3

(1) the communication would not have been made but for the contemplation of legal services;

(2) the employee making the communication did so at the direction of his or her corporate superior;

(3) the superior made the request of the employee as part of the corporation's effort to secure legal advice or services;

(4) the content of the communication relates to the legal services being rendered, and the subject matter of the communication is within the scope of the employee's duties;

(5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents.

*Id.* at 1383.

Petitioners told the trial court that the communications in question, which were shared with the two third parties, would not have been made but for the association's contemplation of legal services; the subject matter was within the scope of the property manager's duties to the association; and the communications were not disseminated beyond those who, because of the corporate structure, needed to know the contents. The association's board ensured the two individuals understood that all communications relating to counsel's representation of the association were attorney-client privileged and could be disclosed only to persons who needed to know because of the structure of the association. We agree that the trial court should have applied a test based on *Deason,* and should have determined, in the course of an *in camera* inspection, whether the privilege as to each document or class of documents was waived by disclosure to the property manager and his supervisor. *See RC/PB, Inc. v. Ritz-Carlton Hotel Co.,* 132 So. 3d 325, 327 (Fla. 4th DCA 2014) (quashing order compelling production and directing trial court to conduct an *in camera* inspection and consider *Deason* factors, where third parties were involved in corporation's communications with counsel).

We reject Respondents' argument that Petitioners waived any right to an *in camera* inspection by suggesting to the judge that he could **uphold** their privilege claims without conducting one. We also reject Respondents' argument that the privilege was waived by the insufficiency of Petitioners' privilege log descriptions. *See Progressive Am. Ins. Co. v. Lanier,* 800 So. 2d 689, 691 (Fla. 1st DCA 2001) (finding the trial court departed from the

4

essential requirements of law in compelling production of notes from insurer's claim file, as privilege log descriptions such as "conversations with defense counsel" and "summary of conversation with defense counsel" were sufficient); *see also Sedgwick Claims Mgmt. Servs., Inc. v. Feller*, 163 So. 3d 1252, 1254 (Fla. 5th DCA 2015) (determining the trial court erred in finding that insufficient detail in a privilege log waived the attorney-client privilege, where counsel could have been given opportunity to amend log to cure any defects, and noting that while failure to follow discovery rules may be sanctioned by waiver of privilege, such waiver should result only when violation is serious).

Petition granted, order quashed, and case remanded for the trial court to conduct an *in camera* inspection, applying the test set forth in *Deason* to determine whether the attorney-client privilege was waived by disclosure to third parties.

CIKLIN, C.J., WARNER and STEVENSON, JJ., concur.

* * *

***Not final until disposition of timely filed motion for rehearing.***