DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**AMERICAN AIRLINES, INC.** and **EDWIN DIAZ,**
Petitioners,

v.

**KIM CIMINO,** individually, as Personal Representative of the Estate of
**MICHAEL CIMINO**, and as Natural Guardian of **MICHAEL DREW
CIMINO**,
Respondent.

No. 4D18-2485

[June 12, 2019]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Patti Englander Henning, Judge; L.T. Case No. 15-1723 (26).

Jennifer Olmedo-Rodriguez, Jesse H. Diner, Kelly H. Kolb, and Mary Beth Ricke, of Buchanan Ingersoll & Rooney PC, Fort Lauderdale and Miami, for petitioners.

Robert A. Rosenberg of The Law Offices of Robert A. Rosenberg, Coral Springs, and Chris Kleppin and Chelsea A. Lewis of Glasser & Kleppin, P.A., Plantation, for respondent.

**ON MOTION FOR REHEARING**

FORST, J.

We deny Respondent's motion for rehearing, but withdraw our previously issued opinion, substituting the following in its place.

Petitioners American Airlines, Inc. ("AA") and Edwin Diaz seek certiorari review of a discovery order that requires Petitioners to produce allegedly privileged documents to Respondent Kim Cimino, individually, as personal representative of the estate of Michael Cimino, and as natural guardian of Michael Drew Cimino (collectively, "the Estate"). The trial court determined that Petitioners "waived privileges" through affirmative defenses. The trial court reached this decision without conducting an *in camera* review of the material at issue, and without defining the scope of

any waiver. As set forth below, we grant the petition and remand for further proceedings.

## Background

The pending litigation arises from Michael Cimino's suicide, committed days after he was fired by AA. Diaz, who had only recently become Cimino's supervisor, told Cimino he was being fired for time card fraud. Cimino, a manager in the cargo area at the Miami airport, had worked for AA for over thirty-four years, purportedly without incident, until Diaz became his supervisor.

In its operative complaint, the Estate alleges claims for violation of the Florida Civil Rights Act, negligent and intentional infliction of emotional distress, negligent retention, and wrongful death. The Estate alleges that the pretextual firing of Cimino, a white, non-Hispanic male, followed Petitioner's long pattern of alleged discrimination and hostility based on race, national origin, and/or ethnicity. Specifically, the Estate alleges that Diaz "hates Anglos" and led the charge to fire Cimino and other Anglo employees before him, resulting in their replacement with Hispanic employees. The Estate further alleges that Diaz, who had been transferred from another location for bullying, bullied and harassed Cimino, threatening him with criminal charges and the loss of his pension and insurance.

According to the complaint, Diaz hired Cimino's replacement well before accusing Cimino of any wrongdoing and firing him. Following purported claims that he was "piggybacking" into the employee parking lot, Cimino was placed on administrative leave. He invoked his right to have a co-worker, Michelle Chung, present for any discussions with Diaz. Discovery from Chung is one of the contested issues—the Estate alleges that Diaz scheduled his final meeting with Cimino when he knew Chung had left work for the day.

The complaint further alleges that AA knew about the bullying and harassment, and that Cimino was suicidal after the firing, as he participated in AA's mental health program which had recommended medication and additional treatment. In short, the complaint alleges that all of the above led to Cimino's depression and ultimate suicide.

The discovery at issue concerns AA's investigation, conducted by Jeanette Gibbs (an HR representative), after receiving anonymous letters from AA Miami cargo employees *following* Mr. Cimino's suicide (the "Gibbs Investigation"), and Gibbs' resulting report. The letters referenced a

petition to remove Diaz and other bullying supervisors from their positions. According to AA, the purpose of the Gibbs Investigation was to gather information to allow AA's legal department to assess AA's liability for potential claims brought by the Estate *and/or other AA employees* relating to workplace conditions at AA's Miami cargo division.

Petitioners have denied liability and asserted various affirmative defenses—the third, fourth and fifth of which pertain to this petition. Briefly, the third, a "mixed-motive" defense, provides that any discriminatory motive for the firing was mixed with a legitimate, non-discriminatory reason, i.e., Cimino's purported falsification of records and dishonesty. The fourth, a "good faith" defense, is based on AA's policies that prohibit discrimination and harassment in the workplace and its procedures for reporting and investigating employee claims of such conduct. In their fifth affirmative defense, Petitioners contend that Mr. Cimino failed to take advantage of preventative and/or corrective opportunities established by AA's policies and procedures by not reporting any of the complained-of conduct.

The Estate filed three motions to compel discovery of materials and testimony that Petitioners assert is attorney-client and work product privileged. Specifically, the Estate moved to compel nonparties Chung and Gibbs to answer deposition questions and to compel AA to produce documents associated with requests 15 and 22.[1] These discovery motions sought materials and witness testimony related to the Gibbs Investigation. The Gibbs Investigation file exceeds 1,000 pages and involves matters beyond those specific to Mr. Cimino.

In their omnibus response to the Estate's motions to compel, Petitioners explained the genesis of the Gibbs Investigation and their basis for asserting the attorney-client and work-product privileges. Petitioners also proposed that the trial court should review the documents *in camera* if it had any questions regarding the privileged nature of the Gibbs Investigation.

At the hearing on its motions to compel, the Estate argued for the first time that Petitioners waived the privileges via their third (mixed-motive),

---

[1] Request no. 15 seeks: "Any complaint from any employee of the corporate Defendant that Edwin Diaz was discriminatory, harassing and/or bullying them at any work site of the corporate Defendant during Diaz's employment with the corporate Defendant." Request no. 22 seeks "[a]ll anonymous complaints concerning various member[s] of the Miami Cargo maintenance team referred to in the deposition of Jeanette Gibbs . . . ."

fourth (good faith) and fifth (failure to report) affirmative defenses. In their court-ordered supplemental memorandum, Petitioners disputed the claimed waiver and consistently maintained the existence of a privilege.

Without conducting an *in camera* review of the material claimed to be privileged, the trial court granted the Estate's motions to compel. The court ruled solely that Petitioners had "waived privileges by virtue of their Affirmative Defenses." Not only did the trial court fail to identify which affirmative defense(s) gave rise to the waiver,[2] but the court failed to define the scope of the purported waiver. Petitioners moved for reconsideration, requesting that, consistent with this court's precedent, the trial court conduct an *in camera* inspection of the Gibbs Investigation materials and witness testimony to determine the scope of the waiver of the asserted privileges and whether those purportedly privileged materials and witness testimony fall outside the scope of that waiver. The trial court denied the motion, and this petition follows.

## Analysis

"Certiorari is available only when the petitioner is able to demonstrate both a departure from the essential requirements of law and the lack of an adequate remedy by direct appeal after final judgment." *Estate of Schleusener v. Stuart*, 462 So. 2d 129, 130 (Fla. 4th DCA 1985). "Certiorari is the appropriate vehicle to obtain review of orders requiring cat-out-of-the-bag disclosure of privileged documents." *Fla. Power & Light Co. v. Hicks*, 162 So. 3d 1074, 1075 (Fla. 4th DCA 2015) (citing *Bd. of Trs. of the Internal Improvement Tr. Fund v. Am. Educ. Enters., LLC*, 99 So. 3d 450, 457 (Fla. 2012)).

In seeking a writ, Petitioners argue that the trial court failed to conduct an *in camera* hearing before it ordered the disclosure of allegedly privileged information, and failed to define the scope of the purported waiver. We agree with both arguments and grant the writ.

Our holding in *Alliant Insurance Services, Inc. v. Riemer Insurance Group*, 22 So. 3d 779 (Fla. 4th DCA 2009), relied upon by Petitioners both below and on appeal, is controlling. In *Alliant*, the trial court similarly granted a motion to compel discovery—over the petitioner's assertions of attorney-client privilege—without conducting an *in camera* inspection of the documents at issue and without defining the scope of any waiver of the privilege. In granting certiorari relief, we held that

_____

[2] The trial court denied Petitioners' motion to clarify which defense(s) "waived privileges."

4

> [i]f a party seeks to compel the disclosure of documents that the opposing party claims are protected by attorney-client privilege, the party claiming the privilege is entitled to an *in camera* review of the documents by the trial court prior to disclosure.
>
> Similarly, if attorney-client privilege is waived regarding a certain matter, the waiver is limited to communications on the same matter. If the parties disagree as to the scope of the privilege waiver, a trial court must delineate the scope of the waiver before it may compel discovery of information.

22 So. 3d at 781 (internal citations omitted); *accord Butler v. Harter*, 152 So. 3d 705, 714 (Fla. 1st DCA 2014); *see also Las Olas River House Condo. Ass'n, Inc. v. Lorh, LLC*, 181 So. 3d 556, 559 (Fla. 4th DCA 2015) (holding it was error to order production of documents regarding communications with the condo association and its attorneys without an *in camera* inspection on the basis the privilege was waived by disclosure to the association's community manager); *Old Holdings, Ltd. v. Taplin, Howard, Shaw & Miller, P.A.*, 584 So. 2d 1128, 1128-29 (Fla. 4th DCA 1991) (finding that where documents may be protected from discovery by both the attorney-client privilege and the work-product doctrine, the petitioners are entitled to an *in camera* review of the documents by the trial court prior to disclosure).[3]

Here, the Estate seeks to compel the discovery of material that AA claims is privileged. As such, Petitioners are entitled to an *in camera* review of the material by the trial court before any disclosure. *Alliant Ins. Servs.*, 22 So. 3d at 781. As for the trial court's finding that Petitioners "waived privileges by virtue of their Affirmative Defenses," the court must delineate the scope of the waiver before it may compel discovery of information. *See id.*; *see also Butler*, 152 So. 3d at 714 (holding that "even if privilege had been waived here, that waiver would have been limited, and petitioner would have been entitled to an *in camera* review" and "find[ing] the trial court departed from the essential requirements of the law in compelling disclosure of the entire litigation file, because that file is protected by work-product and attorney-client privilege").

**Conclusion**

---

[3] Petitioners discussed *Alliant* and *Las Olas River House* extensively in the petition; the Estate addressed neither case in its response.

Petitioners will suffer irreparable harm that cannot be remedied on appeal of a final order if they are compelled to produce privileged materials and witness testimony pursuant to the discovery order. Accordingly, we grant the petition, quash the discovery order and remand this matter to the trial court with instructions to conduct an *in camera* inspection and delineate the scope of any waiver.

*Petition granted, order quashed, and remanded for further proceedings.*

WARNER and KLINGENSMITH, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***

6