731 So.2d 87 (1999)
Seth KATLEIN, Petitioner,
v.
STATE of Florida and Jeffrey Weaver, Respondents.
No. 98-3384.
District Court of Appeal of Florida, Fourth District.
April 7, 1999.
Rehearing Denied May 19, 1999.
*88 Patrick C. Rastatter, of Glass & Rastatter, P.A., Fort Lauderdale, for petitioner.
Robert A. Butterworth, Attorney General, Tallahassee, and Melynda L. Melear, Assistant Attorney General, West Palm Beach, for respondent State of Florida.
Elijah Williams, Fort Lauderdale, for respondent Sheriff Kenneth C. Jenne, II.
Gene Reibman, Fort Lauderdale, for respondent Jeffrey Weaver.
KLEIN, J.
Petitioner is a witness for the state in the criminal prosecution of respondent Weaver. He is expected to testify at trial about a jailhouse conversation he had with Weaver which would assist the state in proving that Weaver murdered a police officer. Petitioner seeks review by certiorari of the trial court's order authorizing Weaver to subpoena petitioner's mental health treatment records from the Broward County Jail. We grant the petition.
The trial court found, after conducting several hearings, that petitioner received medical treatment while incarcerated which involved both mental health and substance abuse services. The court also found that the treatment occurred in 1997 and 1998, after the 1996 conversations alleged to have occurred between petitioner and Weaver. The court concluded that because the petitioner had "made himself known to the prosecutor's office as a potential witness, he has subjected himself to disclosure of the mental health and substance abuse records sought herein."
There are at least two statutes which provide for the confidentiality of these records section 394.4615 and section 397.501, Florida Statutes (1997). Under the former, a court can order the release of mental health records if there is "good cause" and "the court shall weigh the need for the information to be disclosed against the possible harm of disclosure to the person to whom such information pertains." § 394.4615(2)(c), Fla. Stat. (1997). The latter, which more specifically pertains to substance abuse services, also requires good cause and under that statute the court "shall examine whether the public interest and the need for disclosure outweigh the potential injury to the client, the service-provider-client relationship, and to the service provider itself." § 397.501(7)(a)5, Fla. Stat. (1997).
Petitioner relies on Bartlett v. Hamwi, 626 So.2d 1040, 1042 (Fla. 4th DCA 1993), in which the trial court had ordered a prosecution witness in a criminal case to allow hair samples to be taken from her body so that the defense could test them. After discussing a number of cases from Florida as well as other jurisdictions, we concluded that in order to require a witness to submit to this type of testing, the defendant would have to "show that extreme and compelling circumstances exist, and that a manifest injustice, resulting in a denial of due process, would occur, unless the testing is compelled." Our analysis in Bartlett was consistent with State v. Smith, 260 So.2d 489 (Fla.1972), in which our supreme court used equally strong language in holding that a trial court was *89 without authority to require an eyewitness to a crime to submit to an eye examination.
Although it is arguable that requiring the production of the records involved in this case is just as invasive as what the trial courts had erroneously ordered in Bartlett and Smith, we find a distinction because there was neither a common law nor a statutory basis for the examinations in Bartlett or Smith. In the present case, as we explained earlier, the legislature has authorized mental health and substance abuse records to be disclosed under limited circumstances.
In State v. Pinder, 678 So.2d 410 (Fla. 4th DCA 1996), the trial court had granted a defendant's motion for an in-camera hearing involving the testimony of the victim's sexual assault counselor. That information is absolutely privileged under section 90.5035, Florida Statutes (1995), because the statute contains no exceptions. We held that in order to get an in-camera hearing a defendant must "establish a reasonable probability that the privileged matters contain material information necessary to his defense." Id. at 417.
The parties have not included in the record the motion to subpoena the records, and accordingly we cannot determine whether the trial court was justified in having the in-camera hearing. We shall address the standard more specifically further on in this opinion. At this point, we would note that it should be easier to get an in-camera hearing where the privilege is a qualified privilege, rather than an absolute one. We would add that if a trial court were to err on the side of the defendant in a criminal case in granting an in-camera hearing, any harm in that regard would be de minimus compared to erring in ordering the information to be revealed.
This brings us to the more significant issue, which is whether the trial court erred in ordering the petitioner's records to be disclosed to Weaver. In Pinder we relied heavily on Pennsylvania v. Ritchie, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987). Although Pinder involved an absolute privilege, and is thus distinguishable from the present case, Ritchie is analogous. In Ritchie the defendant was charged with sexually assaulting his daughter and he was attempting to obtain the records of the state agency charged with investigating child abuse. The records were confidential by statute; however, the privilege against disclosure was not absolute. As in this case, the statute allowed disclosure pursuant to a court order.
The trial court denied disclosure and Ritchie argued that the non-disclosure violated his confrontation rights under the Sixth Amendment of the United States Constitution as well as his due process right to have the government turn over evidence material and favorable to the accused. The Supreme Court concluded that, under the statute, Ritchie was entitled to have the trial judge review the files in order to determine if they contained information that "probably would have changed the outcome of his trial." Id. at 58, 107 S.Ct. 989. It is important to remember that in Ritchie the defendant had been convicted and was seeking a new trial. More pertinent to our analysis is an earlier statement in Ritchie, in which the Court observed that "our cases establish, at a minimum, that criminal defendants have the right to ... put before a jury evidence that might influence the determination of guilt." Ritchie, 480 U.S. at 56, 107 S.Ct. 989 and cases cited therein.
In another case we cited in Pinder, Commonwealth v. Bishop, 416 Mass. 169, 617 N.E.2d 990 (1993), a defendant accused of molesting minors who testified against him had been denied access to their psychological and medical records. After acknowledging the rights of criminal defendants established by the Supreme Court in Ritchie, as well as the importance of the confidentiality of these records, the Massachusetts Supreme Court observed:
In balancing these competing interests, we recognize that in certain circumstances a defendant must have access to *90 privileged records so as not to undermine confidence in the outcome of trial....
The issue then devolves to the need to articulate a standard that judges can apply to identify those circumstances in which disclosure of the victim's records privileged by statute is required to provide the defendant a fair trial. It may be said that the controverted privilege shall be pierced in those cases in which there is a reasonable risk that nondisclosure may result in an erroneous conviction.
Bishop, 617 N.E.2d at 994-95.
Under Bishop "the defendant must show, at the threshold, that records privileged by statute are likely to contain relevant evidence." Id. at 996. The defendant must advance a good faith factual basis which is not "merely a desperate grasping at a straw." Id. at 997 (quoting People v. Gissendanner, 48 N.Y.2d 543, 423 N.Y.S.2d 893, 399 N.E.2d 924 (1979)). In other words, no fishing expeditions. If the defendant shows that the records are likely to contain certain relevant evidence, the court will do the in-camera inspection.
If the court determines that the privileged records contain relevant information, the court then allows defense counsel and the state access in order to determine whether disclosure of the information to the trier of fact is "required to ensure the defendant a fair trial." Id. at 997, citing Ritchie, 480 U.S. at 57, 107 S.Ct. 989. The burden is on the defendant to demonstrate that disclosure of relevant portions of the records is required. Id. at 998. Any doubts should be resolved in favor of disclosure. Id. at 995.
We believe that the above described standards applied in Bishop represent a workable method to be applied by trial judges for the production of information, qualifiedly privileged by statute, in a criminal case. It is a reasonable compromise between the competing societal interests, a fair trial and confidentiality of these records.
In the present case the only ground contained in the order requiring production was that, because the petitioner had "made himself known to the prosecutor's office as a potential witness, he has subjected himself to disclosure of the mental health and substance abuse records sought herein." We disagree with the trial court that petitioner's volunteering to testify waives the confidentiality. This is not analogous to a plaintiff in a personal injury case waiving confidentiality to mental health records by claiming emotional injuries. If we were to so hold it would not only discourage witnesses from coming forward, but could also discourage persons who need mental health or substance abuse treatment from seeking it. The reason given in this order was, therefore, insufficient as a matter of law.
We have also considered the statements made by the court on the record, after the in-camera review, and have concluded that the court did not find the records sufficiently relevant to meet the standard we have established in this opinion. As we noted earlier, the court found that the treatments had occurred in 1997 and 1998, well after the 1996 alleged conversations. The court seems to have concluded, at most, only that the information might have led to admissible evidence. That would not justify production under these circumstances.
We quash the order requiring production.
WARNER and STEVENSON, JJ., concur.