817 So.2d 901 (2002)
The STATE of Florida, Petitioner,
v.
David FAMIGLIETTI, Respondent.
No. 3D01-1158.
District Court of Appeal of Florida, Third District.
May 8, 2002.
*902 Robert A. Butterworth, Attorney General, and Paulette R. Taylor, Assistant Attorney General, for petitioner.
Bennett H. Brummer, Public Defender, and Eric M. Cohen, Special Assistant Public Defender, for respondent.
H. Scott Fingerhut, Miami; Benedict P. Kuehne of Sale & Kuehne for the Florida Association of Criminal Defense Lawyers-Miami Chapter as amicus curiae.
William R. Samek, Ph.D. for the Florida Psychological Association as amicus curiae.
Before SCHWARTZ, C.J., and JORGENSON, COPE, LEVY, GERSTEN, GODERICH, GREEN, FLETCHER, SHEVIN, SORONDO, and RAMIREZ, JJ.

On Rehearing En Banc
COPE, J.
The question presented is whether the defendant in a criminal case can invade the victim's privileged communications with her psychotherapist if the defendant can establish a reasonable probability that the privileged matters contain material information necessary to his defense.[1] We conclude that the answer is no.
First, the Evidence Code contains no authority for such an invasion of privileged matter. Second, no applicable constitutional provision authorizes an intrusion into matters protected by the psychotherapist-patient privilege.

I.
In this domestic violence case, the defendant is charged with attempted murder for beating the victim, his girlfriend, nearly to death with a tire iron, and with ramming the police vehicle of the officers who attempted to apprehend him the following day.
The defense took the deposition of the victim and asked her about prior incidents of domestic violence. The victim testified that in connection with a prior incident of domestic violence (for which she was hospitalized), she told her psychiatrist that she had been beaten by two unknown males. She indicated that she did this because she did not want to disclose that the defendant, her boyfriend, had beaten her.
The defendant moved for issuance of a subpoena duces tecum to the victim's psychiatrist, requiring disclosure of all of the victim's psychiatric records. The defendant's motion asserted that the information in the psychiatric files "is potentially either exculpatory evidence, goes to the credibility of the victim's testimony or is necessary information toward the preparation of the Defendant's defense."[2]
The trial court granted the motion in part. The court ruled that all of the psychiatrist's files regarding the victim would be disclosed to the judge in camera. The *903 judge would then make the determination whether to release any of the records to the defense.
The State filed a petition for writ of certiorari. A panel of this court granted the petition and quashed the order. The panel opinion agreed with the defendant in principle that a defendant could invade a victim's privileged psychiatric records through the application of a balancing test.
The panel concluded, however, that in this case the defendant had not made a sufficiently specific showing of need to justify invading the victim's psychiatric records. The trial court order was quashed, but without prejudice to the defendant to make a more particularized showing.
On its own motion, this court set the case for rehearing en banc.

II.
In setting this case for en banc consideration, the court directed the parties to address (among other things) the question whether the State had standing to assert the psychotherapist-patient privilege on behalf of the patient. The State is not listed in subsection 90.503(3), Florida Statutes (2001) as one of the persons or entities that may invoke the psychotherapist-patient privilege on behalf of a patient.
We are now satisfied that the State does have standing. First, subsection 960.001(7), Florida Statutes (2001), provides in part, "The victim of a crime ... and the state attorney, with the consent of the victim ... have standing to assert the rights of a crime victim which are provided by law or s.16(b), Art. I of the State Constitution." The psychotherapist-patient privilege is a right provided by law. § 90.503, Fla. Stat. (2001).
Second, the defense has not raised any objection to the State's standing. Under Florida Supreme Court precedent, the issue of standing is waived if it is not raised in the trial court. Krivanek v. Take Back Tampa Political Committee, 625 So.2d 840, 842 (Fla.1993); Markham v. Neptune Hollywood Beach Club, 527 So.2d 814, 814 n. 2 (Fla.1988); Cowart v. City of West Palm Beach, 255 So.2d 673, 674-75 (Fla.1971).

III.
Proceeding to the merits, the Evidence Code does not contain any provision which would allow the defendant to invade a victim's communications which are protected by the psychotherapist-patient privilege.
Under the Evidence Code, the patient of a psychotherapist "has a privilege to refuse to disclose, and to prevent any other person from disclosing, confidential communications or records made for the purpose of diagnosis or treatment of the patient's mental or emotional condition. ..." § 90.503(2), Fla. Stat. (2001). By the plain language of the Code, if the communication is privileged then it is not to be disclosed.
In defining the scope of the psychotherapist-patient privilege, the Code contains three exceptions. Id. § 90.503(4). These exceptions say in substance that there is no privilege in involuntary commitment proceedings, or when there is a court-ordered mental examination, or when the patient herself raises the issue of her mental condition in litigation.[3] The Evidence *904 Code also provides that the privilege may be waived by voluntary disclosure. Id. § 90.507.[4]
None of the statutory exceptions applies in this case. Thus, the psychiatric records at issue here are privileged. Under the plain words of the Evidence Code the victim has a right to prevent the disclosure of her psychiatric record.
The dissent argues that if the legislature has created exceptions to the psychiatrist-patient privilege then it follows that the privilege is somehow a qualified, or limited, one which may be invaded under a balancing test. That is not so.
The Evidence Code itself describes the scope of the privilege which has been created. If the communication fits within the privilege, then the patient may refuse, and may insist that others refuse, to disclose the communication. Id. § 90.503(2). There is no language in the Code which expressly or impliedly allows anyone to override a valid claim of psychiatrist-patient privilege. Cf. Jackson v. State, 603 So.2d 670, 671 (Fla. 4th DCA 1992) ("As the statute specifically delineates those exceptions to the marital privilege, we are loath to add additional exceptions.") (citations omitted).
When the legislature desires to create a qualified privilege, it knows how to do so. When the legislature created the journalist's privilege, the legislature said in plain words that it is "a qualified privilege not to be a witness concerning ... information... that the professional journalist has obtained while actively gathering news." § 90.5015(2), Fla. Stat. (2001) (emphasis added). The statute goes on to set forth the balancing test which must be met by "[a] party seeking to overcome this privilege...." Id.[5]
The psychotherapist-patient privilege contains no "qualified privilege" language. The psychotherapist-patient privilege does not contain any authority for invading the privileged communication nor any legal standard for doing so.
Arguing for judicially created exceptions to Evidence Code privileges, the dissent *905 points to a statement by the Florida Supreme Court that "[t]he attorney-client privilege is not absolute and `may be outweighed by the public interest in the administration of justice in certain circumstances.'" Turner v. State, 530 So.2d 45, 46 (Fla.1987) (citation omitted). But in Turner the disclosure of the privileged communications was authorized by a specific provision of the Evidence Code. Id. (citing § 90.502, Fla. Stat.). The Turner decision did not involve a judicially-created exception to the attorney-client privilege.
The dissent makes reference to the State's limited privilege to withhold the identity of a confidential informant. However, that analogy does not apply here. The privilege regarding the confidential informant is purely a creature of case law, and case law defines its scope. In the present case we deal with a testimonial privilege which has been codified in the Evidence Code. Once codified, the words of the statute control.
The defendant relies on Katlein v. State, 731 So.2d 87 (Fla. 4th DCA 1999), but that case involved mental health treatment records covered by sections 394.4615 and 397.501, Florida Statutes (1997). 731 So.2d at 88. Both statutes allowed release of mental health records on a showing of good cause. Id. There is no comparable provision in the Evidence Code for invasion of the psychotherapist-patient privilege under a good cause standard.
The defendant argues that disclosure is authorized in this case by section 90.510, Florida Statutes, which states:
90.510. Privileged communication necessary to adverse party.
In any civil case or proceeding in which a party claims a privilege as to a communication necessary to an adverse party, the court, upon motion, may dismiss the claim for relief or the affirmative defense to which the privileged testimony would relate. In making its determination, the court may engage in an in camera inquiry into the privilege.
(Emphasis added).
By its terms, section 90.510 does not apply. First, this Evidence Code provision applies only in civil cases, not criminal cases. Second, even if it did, the crime victim is not a party to the case.

IV.
The foregoing interpretation of the Evidence Code is also sound policy. Writing in the context of federal evidentiary rules, the United States Supreme Court considered a case in which the Seventh Circuit had held that the psychotherapist-patient privilege could be overcome if "in the interests of justice, the evidentiary need for the disclosure of the contents of a patient's counseling sessions outweighs that patient's privacy interests." Jaffee v. Redmond, 518 U.S. 1, 7, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996) (citation and internal quotation marks omitted).
The Supreme Court said:
We part company with the Court of Appeals on a separate point. We reject the balancing component of the privilege implemented by that court and a small number of States. Making the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege. As we explained in Upjohn [v. United States, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) ], if the purpose of the privilege is to be served, the participants in the confidential conversation "must be able to predict with some degree of certainty whether particular discussions will be protected. An uncertain *906 privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all." 449 U.S. at 393, 101 S.Ct. at 684.
Jaffee, 518 U.S. at 17-18, 116 S.Ct. 1923 (emphasis added).
That analysis is on point here. The Evidence Code sets forth what communications will be held confidential precisely so that citizens know in advance what the ground rules are.
The dissent focuses on footnote 19 of Jaffee, in which the Court said:
Although it would be premature to speculate about most future developments in the federal psychotherapist privilege, we do not doubt that there are situations in which the privilege must give way, for example, if a serious threat of harm to the patient or to others can be averted only by means of a disclosure by the therapist.
Id. at 18 n. 19., 116 S.Ct. 1923[6] The dissent suggests that in footnote 19 the Court has adopted the very same balancing test that the Court rejected in the text of the Jaffee opinion. Respectfully, that is not so.
In the federal system, unlike Florida, evidentiary privileges are established by case law. Federal Evidence Rule 501 provides, as pertinent here, that "the privilege of a witness ... shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." In footnote 19, the Jaffee Court acknowledged that federal courts may in the future announce that some communications are not protected by the psychotherapist-patient privilege. The Jaffee decision is very clear, however, that once a communication falls within the scope of the psychotherapist-patient privilege, it is not to be invaded under any sort of a balancing test, because to allow such an invasion would defeat the purpose of the privilege.

V.
The next question is whether the psychotherapist-patient privilege may be invaded under federal constitutional principles. Again, we conclude that the answer is no.
The Fourth District Court of Appeal has held that under the due process clause, a defendant in a criminal case may obtain access to the victim's privileged communications with a sexual assault counselor. State v. Pinder, 678 So.2d 410 (Fla. 4th DCA 1996). Those records would otherwise be immune from disclosure under section 90.5035, Florida Statutes (2001), which creates the sexual assault counselor-victim privilege. Under Pinder:
To obtain in camera review of confidential communications or records under section 90.5035, a defendant must first establish a reasonable probability that the privileged matters contain material information necessary to his defense. Only then may a trial court conduct an in camera hearing to determine if, in fact, the privileged communications contain such information.
678 So.2d at 417 (citation omitted); see also Katlein, 731 So.2d at 90.
When the present case was pending in the trial court, the parties and the court proceeded on the assumption that Pinder correctly stated the applicable law. After the trial court granted the request for an in camera inspection, the State petitioned *907 for a writ of certiorari in this court on theory that the defense showing was insufficient to satisfy the requirements of Pinder.
On its own motion, this court directed the parties to address the question whether Pinder correctly states the applicable law. It is our conclusion that Pinder is wrongly decided.
It is of course true that a constitutional provision can override a state evidentiary code. But such an invasion is not called for under the circumstances present here.
For its analysis the Pinder court relied heavily on Pennsylvania v. Ritchie, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987). The Ritchie case, however, did not involve a testimonial privilege. Instead, the Ritchie case involved a Pennsylvania statute which provided that case files of the state Children and Youth Services agency ("CYS") were not public records and must be held confidential. 480 U.S. at 43-44, 107 S.Ct. 989. The state statute contained numerous exceptions, including an exception which allowed disclosure "to a `court of competent jurisdiction pursuant to a court order.'" Id. at 44, 107 S.Ct. 989 (citation omitted).
The Supreme Court noted that "[t]his is not a case where a state statute grants CYS the absolute authority to shield its files from all eyes." Id. at 58, 107 S.Ct. 989 (citation and footnote omitted). The Court ruled that the defendant was "entitled to have the CYS file reviewed by the trial court to determine whether it contains information that probably would have changed the outcome of his trial." Id. The Court expressly left open the question "whether the result in this case would have been different if the statute had protected the CYS files from disclosure to anyone, including law-enforcement and judicial personnel." Id. at 58 n. 14, 107 S.Ct. 989 (emphasis in original).
In the present case we deal with a generally-accepted testimonial privilege,[7] not a statute protecting a public agency's case files, and in the present case there is no statutory provision which authorizes disclosure. Neither Ritchie nor an earlier similar case, Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), constitute authority that the due process clause authorizes the invasion of a generally-recognized testimonial privilege. Indeed, the more recent decision of the United States Supreme Court in Jaffee rejects the idea of applying a balancing test to the psychotherapist-patient privilege. 518 U.S. at 17-18, 116 S.Ct. 1923. See also John W. Strong, McCormick on Evidence § 74.2 (5th ed.1999).
The Pinder court concluded that the Florida Supreme Court has adopted such a due process balancing test in Mills v. State, 476 So.2d 172 (Fla.1985), but that reads too much into the Mills decision. In Mills, defense counsel on cross-examination of a state witness asked questions which drew an objection (by the state and by the witness' own counsel) on grounds of attorney-client privilege. 476 So.2d at 175. The Florida Supreme Court held that the objections were properly sustained and that the defendant's cross-examination and confrontation rights did not outweigh the assertion of privilege. Id. at 176. The Mills decision upholding a claim of privilege is not properly viewed as authority for invading the privilege.
In sum, the due process clause does not authorize the invasion of a generally-accepted *908 testimonial privilege.[8]

VI.
We conclude that there is neither an Evidence Code provision, nor an applicable constitutional principle, which allows the invasion of the victim's privileged communications with her psychotherapist. Accordingly we quash the trial court's order. We certify direct conflict with Pinder.
As this case illustrates, reasonable people can disagree over whether evidentiary privileges have value, and under what circumstances (if any) privileged communications may be invaded. The policy determinations in this case have been made by the legislature in the Evidence Code, and if the evidentiary privileges are to be modified, then the legislature is the appropriate body to address it.[9]
JORGENSON, GERSTEN, GODERICH, and GREEN, JJ., concur.
RAMIREZ, J., concurs with opinion.
RAMIREZ, J. (concurring).
I concur with the result in Judge Cope's majority opinion and with the certification of conflict with State v. Pinder, 678 So.2d 410 (Fla. 4th DCA 1996), which requires that "a defendant must first establish a reasonable probability that the privileged matters contain material information necessary to his defense." Id. at 416. In my view, that test is too permissive. However, I cannot agree with Judge Cope that the privilege is absolute; simply that under the facts of this case, I cannot conceive of anything that Famiglietti could possibly allege upon remand that would be sufficient to overcome the privilege. As Chief Judge Schwartz wrote in his specially concurring opinion, the basis for invading the victim's privilege here is "entirely fanciful." At best, the testimony of the psychiatrist would only be used for impeachment. There may be situations in the future where the privilege should yield, but not in this case.
SCHWARTZ, Chief Judge (specially concurring in part and dissenting in part).
I agree with granting certiorari and quashing the order under review, but I would do so without reaching the contentious issues and sub-issues surrounding the extent and nature of the psychotherapist privilege and the validity of the Pinder decision.
The sole basis for the defendant's attempt to invade the secrecy of the victim's communications with her psychotherapist is the entirely fanciful suggestion that, because, for a good reason she fully explained, the victim had attempted to protect the defendant by claiming that someone else had committed an earlier assault upon her, *909 she "might" have also made a similar admission about the present crime. Since there is nothing whatever to this line of reasoning, as to which speculative is too worthy a description, it is obvious that production may not be required even under the most permissive standard of invading the privilege imaginable, let alone the very restrictive one adopted in Pinder. Hence, there is no occasion for us to speculate, in what must be the ultimate dicta, as to whether the privilege might be deemed conditional under some theoretical circumstances not present here, as Judge Sorondo argues, or absolute under all circumstances, as Judge Cope opines. Following the more basic principles of judicial self-restraint, therefore, I would confine our opinion to holding that, whether or not an exception to the privilege may exist, none is presented as a matter of law in the present case.
Consistent with this position, I would, as a member of the panel, amend the original opinion by removing the dicta as to these questions and, since that dicta is the sole basis of en banc consideration, dissolve the en banc court. It follows also that I disagree with the appropriateness of certifying conflict with Pinder.
JORGENSON and LEVY, JJ., concur.
SORONDO, J. (dissenting).
I begin by noting that neither the state nor the defendant has sought rehearing or rehearing en banc of the panel opinion. The state's original petition did not argue that the privilege in question is impenetrable or that State v. Pinder, 678 So.2d 410 (Fla. 4th DCA 1996), was wrongly decided.[10] The state's sole objection was that defendant's motion was legally insufficient to require the requested in camera inspection. At oral argument, defendant acknowledged that his motion was insufficient and requested only an opportunity to submit a new one. Nevertheless, having been prompted by this Court's questions, the state now takes the diametrically contrary position that the privilege in question is impenetrable and that Pinder was wrongly decided.
For the reasons set forth in part II of the majority opinion, I agree that the state has standing to raise the issue of the alleged victim's psychotherapist-patient privilege.
The panel opinion addresses the arguments made by the majority in parts III and VI of its opinion. These sections seek to explain the majority's reading of the statute in question, and its disagreement with Pinder, Katlein v. State, 731 So.2d 87 (Fla. 4th DCA 1999), and the reasoning upon which they were decided. Suffice it to say that for the reasons set forth in the panel opinion, Pinder, and Katlein, I disagree with the majority.[11]
*910 As concerns the question of whether the privilege at issue is "qualified" or "absolute," I agree with the Katlein analysis that because the statute contains exceptions, it is a qualified privilege. Addressing the attorney-client privilege, which like the psychotherapist-patient privilege contains exceptions within the statute, in Turner v. State, 530 So.2d 45, 46 (Fla.1987), the Florida Supreme Court stated: "The attorney-client privilege is not absolute and `may be outweighed by public interest in the administration of justice in certain circumstances.'" (quoting Sepler v. State, 191 So.2d 588, 590 (Fla. 3d DCA 1966))(emphasis added). If the attorney-client privilege is not absolute, then it is necessarily one that is limited or qualified. Although Sepler was decided before the adoption of the Florida Evidence Code, the Supreme Court embraced its reasoning thereafter. If the attorney-client privilege is qualified, it follows that the psychotherapist-patient privilege is as well.
I turn now to the majority's discussion of the United States Supreme Court's decision in Jaffee v. Redmond, 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996). The majority accurately quotes a section of Jaffee that rejects the Seventh Circuit Court of Appeals' balancing of interests approach:
We reject the balancing component of the privilege implemented by that court and a small number of States. Making the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege.
Id. at 17-18, 116 S.Ct. 1923. As the majority suggests, this language seems clear. The Supreme Court, however, does not stop there. It goes on to say:
Because this is the first case in which we have recognized a psychotherapist privilege, it is neither necessary nor feasible to delineate its full contours in a way that would `govern all conceivable future questions in this area.'
Id. at 18, 116 S.Ct. 1923 (quoting Upjohn Co. v. United States, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)). In a footnote to this statement the Court states:
Although it would be premature to speculate about most future developments in the federal psychotherapist privilege, we do not doubt that there are situations in which the privilege must give way, for example, if a serious threat of harm to the patient or to others can be averted only by means of a disclosure by the therapist.
Jaffee, 518 U.S. at 18, n. 19, 116 S.Ct. 1923 (emphasis added). Accordingly, although the Court appears to say that the privilege *911 is absolute, it specifically recognizes that it is not. Moreover, the balancing test the Court rejects as unacceptable will ultimately be employed by judges, presumably by way of in camera hearings, to determine when the privilege must "give way." Thus, it is clear that even within the realm of civil cases the privilege is not absolute, and will be subjected to a balancing analysis. Indeed, the creation of exceptions to the privilege has already begun.
In In Re Grand Jury Proceedings (Gregory P. Violette), 183 F.3d 71 (1st Cir.1999), the First Circuit Court of Appeal held that the crime-fraud exception, which is applicable to the attorney-client privilege, is also applicable to the psychotherapist-patient privilege. In doing so the court observed:
The Jaffee Court did not envision the psychotherapist-patient privilege as absolute or immutable. Rather, the Court suggested the possibility of exceptions to the operation of the privilege and prophesied that the details would emerge on a case by case basis.
Id. at 74; see also United States v. Alperin, 128 F.Supp.2d 1251 (N.D.Cal.2001)("Jaffee does not discuss how the privilege is to be applied when a criminal defendant's constitutional rights are implicated."); 3 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE, § 504.07[9], at 504-24 (2d ed. 2000)("[T]he discussion of balancing in Jaffee was general in nature and did not advert to the special concerns that apply when a litigant has a constitutional right to disclosure of otherwise confidential information.").
In United States v. Hansen, 955 F.Supp. 1225 (D.Mont.1997), the defendant moved for a subpoena duces tecum ordering the alleged murder victim's psychiatrist to produce the victim's records. The district court first determined that the privilege survived the alleged victim's death and that the psychiatrist had standing to challenge the subpoena. The court then engaged in the balancing process Judge Cope suggests is contrary to Jaffee:
In Jaffee, the Court found that the important public and private interests underlying the privilege outweighed the "modest" evidentiary benefit that would likely result from denial of the privilege. Here, in contrast, the likely evidentiary benefit is great: The defendant is charged with homicide and faces a possible loss of liberty. The mental and emotional condition of the deceased is a central element of her claim of self-defense. The holder of the privilege has little private interest in preventing disclosure, because he is dead. The public does have an interest in preventing disclosure since persons in need of therapy may be less likely to seek help if they fear their most personal thoughts will be revealed, even after their death. However, I find that the defendant's need for the privileged material outweighs this interest.
Id. at 1226 (citations omitted).
In 1992, the Second Circuit Court of Appeal decided the case of Doe v. Diamond, 964 F.2d 1325 (2d Cir.1992). For reasons similar to those explained by the United States Supreme Court in Jaffee, the Second Circuit recognized the psychotherapist-patient privilege. In Diamond, the court held a witness in contempt for refusing to answer questions regarding his psychiatric history. The witness was a key government witness against the defendant in a case charging extortion.
Having recognized the existence of the privilege, the court proceeded to balance the witnesses' privacy interest against the defendant's need for the information. The court held as follows:

*912 Although [the witness's] psychiatric files do contain material that squarely implicates his privacy interests, the balance in this case weighs overwhelmingly in favor of allowing an inquiry into his history of mental illness. [The witness] is not only the person who initiated the criminal investigation against Diamond but also a witness whose credibility will be the central issue at trial. He has a long history of emotional illness, and there is expert psychiatric opinion in the record that this history is relevant to his credibility. That opinion includes the observation that appellant's `interpretation of reality' might have been affected during times in which he was undergoing psychiatric treatment, as he was at the time of the events about which he is to testify. We agree with [the trial judge] that a preclusion of any inquiry into [the witness's] psychiatric history would violate the Confrontation Clause and vitiate any resulting conviction of Diamond.
Id. at 1329. Although the case was decided before Jaffee, it is clear that the Second Circuit, sharing the privacy concerns the Supreme Court would express four years later, realized that a balancing test was necessary in order to comply with the constitutional guarantees that inhere in criminal cases.
Although there are several scenarios that concern me, there are two that I find particularly disturbing. The first, is the crime-fraud scenario discussed in In re Grand Jury Proceedings. Consider a case where the alleged victim of a crime tells her psychotherapist that she has fallen in love with a co-worker, and that in order to facilitate a favorable financial settlement in a divorce from her husband she has manufactured charges of domestic violence against him. She further states that in addition to the false testimony she intends to offer at her husband's criminal trial, she has purchased the perjured testimony of two of her friends who will corroborate fictional instances of physical abuse by her husband. Such statements, preserved in the notes of the therapist or elicited from the therapist by way of deposition and at trial are exculpatory and should be made available to the defendant.[12]
*913 The second scenario is that of a state witness who has a history of mental illness and has been diagnosed as psychotic. The witness's contact with reality is tenuous and dependent upon his or her taking psychotropic medication. As is the case with many people who suffer from such problems, the witness has a history of not taking the prescribed medication because of the unpleasant side effects it produces. Through independent investigation, defendant learns that the witness's psychotherapeutic sessions always begin with a discussion concerning whether the witness has taken his or her medication. Defendant establishes that without the medication the witness is not in touch with reality and is incapable of perceiving and recollecting ordinary events. A legally sufficient motion is filed for an in camera hearing, asking the trial court to review the therapist's notes on this specific issue for the witness's sessions every week for the six weeks prior to the events the witness says he saw. As in the previous example, the results of such a request would also be exculpatory and due process requires that it be made available to the defense.[13]
In this case, as concerns the collateral crime evidence, the alleged victim has voluntarily admitted telling her psychiatrist that someone other than defendant perpetrated the alleged violent act.[14] If the psychiatric records reflect that she made a similar representation concerning the present charges, defendant is entitled to know it and should be allowed to present such evidence to the jury.
I am not blind to the potential for abuse in this area. For this reason, the panel opinion adopts the reasoning of Pinder, and clarifies the "stringent test to justify in camera disclosure." 678 So.2d at 417. Although the majority criticizes the panel's use of the confidential informant privilege in its analysis, this analogy is used only to define the strong showing required prior to entitlement to even an in camera inspection of the records in question, and how that showing is to be accomplished.
The panel opinion does not allow a wholesale fishing trip through the alleged victim's private psychiatric records. Rather, subject to a preliminary and specific showing of need, it directs the trial judge to conduct a review only of those records that are temporally relevant to the events at issue. The judge would then look for those matters defendant alleges to be necessary to his defense. If production of some parts of the records is appropriate, only those relevant portions, in context, should be produced. The trial judge is free to issue a concomitant protective order forbidding publication of the material except at trial, if the case gets that far. *914 Accordingly, the invasion of privacy is limited and the necessary balance is struck.[15]
In United States v. Nixon, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974), the United States Supreme Court addressed the issue of evidentiary privileges within the context of a criminal case:
Whatever their origins, these exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth.
Id. at 710, 94 S.Ct. 3090. The Court evaluated President Nixon's claim of executive privilege against a subpoena duces tecum issued by the United States District Court and stated:
[T]his presumptive privilege must be considered in light of our historic commitment to the rule of law. This is nowhere more profoundly manifest than in our view that `the twofold aim (of criminal justice) is that guilt shall not escape or innocence suffer.' We have elected to employ an adversary system of criminal justice in which the parties contest all issues before a court of law. The need to develop all relevant facts in the adversary system is both fundamental and comprehensive. The ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts. The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence. To ensure that justice is done, it is imperative to the function of courts that compulsory process be available for the production of evidence needed either by the prosecution or by the defense.

Id. at 708-09, 94 S.Ct. 3090 (citation omitted) (emphasis added). I agree.
As repugnant as it may be, a civilized society can survive the acquittal of a guilty person. The wrongful conviction and sentence of an innocent person is intolerable, and I am unwilling to sacrifice such a person on the altar of the psychotherapist-patient privilege.
I respectfully dissent.
FLETCHER and SHEVIN, JJ., concur.
NOTES
[1] The court expresses its appreciation for the amicus briefs submitted by the Florida Association of Criminal Defense Lawyers and the Florida Psychological Association, at the invitation of the court.
[2] The motion was not served on the victim or her psychiatrist. At oral argument the State advised this court that the victim had been informed of the motion by the State during the trial court proceedings. The victim advised the State that she objected to disclosure of her communications with her psychiatrist.
[3] The Evidence Code provides:

(4) There is no privilege under this section:
(a) For communications relevant to an issue in proceedings to compel hospitalization of a patient for mental illness, if the psychotherapist in the course of diagnosis or treatment has reasonable cause to believe the patient is in need of hospitalization.
(b) For communications made in the course of a court-ordered examination of the mental or emotional condition of the patient.
(c) For communications relevant to an issue of the mental or emotional condition of the patient in any proceeding in which the patient relies upon the condition as an element of his or her claim or defense or, after the patient's death, in any proceeding in which any party relies upon the condition as an element of the party's claim or defense. Id.
[4] The defense has not relied on any claim of waiver in this proceeding. We express no opinion on the question whether the victim's testimony regarding the substance of one communication with her psychiatrist accomplished a waiver as to that communication.
[5] The statute provides:

A party seeking to overcome this privilege must make a clear and specific showing that:
(a) The information is relevant and material to unresolved issues that have been raised in the proceeding for which the information is sought;
(b) The information cannot be obtained from alternative sources; and
(c) A compelling interest exists for requiring disclosure of the information.
The other well-known qualified privilege is the work product immunity which is now codified in Florida Rule of Civil Procedure 1.280(b)(3). As set forth by the Rule, a litigant may obtain work product materials "only upon a showing that the party seeking discovery has need of the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Id. There is no comparable language in the psychotherapist-patient privilege.
[6] Although not an issue in this case, Florida law already addresses the issue of disclosure by a psychiatrist where necessary to give warning of a threat of physical harm. § 456.059, Fla. Stat. (2001).
[7] According to Jaffee, the psychotherapist-patient privilege is recognized by all fifty states, the District of Columbia, and the federal courts. 518 U.S. at 13-15, 116 S.Ct. 1923.
[8] If Pinder is correct, then logically it applies not just to the psychotherapist-patient privilege but to other privileges as well, including the attorney-client privilege. See § 90.502(4), Fla. Stat. (2000). Under the logic of Pinder it is hard to see in a criminal case why a defendant could not upon a showing of need compel disclosure of a nontestifying codefendant's communications with counsel.
[9] One anomaly of the Pinder rule is its one-sided nature. Pinder allows the defendant to invade the crime victim's privileged communications, while allowing the defendant's own evidentiary privileges to remain intact. Thus, if the defendant made inculpatory statements to his own psychotherapist, or his own attorney, the defendant may rely on his Evidence Code privileges to prohibit discovery of those statementswhile at the same time (under Pinder) being allowed to invade the crime victim's privileged communications. This hardly seems equitable. If the Evidence Code is to be modified (and we take no position on whether such a step should be taken), it should be done with due consideration for all of the interests involved.
[10] I note that the state has never been reluctant to argue that our sister courts have erroneously decided any given issue. The attorney general is well aware that this Court is not bound by the decisions of other district courts and has urged us to go another way when he believes those courts have erred in their interpretation of the law.
[11] The majority argues in part III of its opinion that because the Florida Evidence Code does not provide for an exception under the facts of this case, none can exist. In fact, many courts have decided to the contrary in states having statutory provisions that are indistinguishable from Florida's. See, e.g., CONN. GEN.STAT. § 52-146c.(b) (2002)(State v. Slimskey, 257 Conn.842, 779 A.2d 723 (2001)); IOWA CODE § 622.10 (2000)(McMaster v. Iowa Bd. of Psychology Examiners, 509 N.W.2d 754 (Iowa 1993)); Ky. Rule Evid. 507 (Hodge v. Commonwealth, 17 S.W.3d 824 (Ky. 2000)); MD. CTS. & JUD. PROC.CODE ANN. § 9-109 (2001) (Goldsmith v. State, 337 Md.112, 651 A.2d 866 (1995)); MASS. GEN. LAWS ch. 233, § 20B (2002) (Commonwealth v. Oliveira, 431 Mass.609, 728 N.E.2d 320 (2000)); MICH. COMP. LAWS § 333.18237 (2001) (People v. Stanaway, 446 Mich.643, 521 N.W.2d 557 (1994)); MONT.CODE ANN. § 26-1-807 (2001) (State v. Duffy, 300 Mont.381, 6 P.3d 453 (2000)); NEB.REV.STAT. § 27-504 (2001)(State v. Trammell, 231 Neb.137, 435 N.W.2d 197 (1989)); N.H. Rule Evid. 503 (State v. Elwell, 132 N.H.599, 567 A.2d 1002 (1989)); N.J. STAT. ANN. § 45:14B-28 (West 2001)(Correia v. Sherry, 335 N.J.Super. 60, 760 A.2d 1156 (2000)); N.M. Rule Evid. 11-504 (State v. Gonzales, 1996-NMCA-026, 121 N.M. 421, 912 P.2d 297 (N.M.Ct.App.1996)); N.Y. CIV. PRAC. LAW § 4507 (McKinney 2001) (People v. Arnold, 177 A.D.2d 633, 576 N.Y.S.2d 339 (N.Y.App.Div.1991)); R.I. GEN LAWS § 5-37.3-4 (2001) (State v. Holmes, 715 A.2d 576 (R.I. 1998)); TENN.CODE ANN. § 24-1-207 (2001)(State v. Middlebrooks, 840 S.W.2d 317 (Tenn.1992), superceded by statute on other grounds, State v. Stout, 46 S.W.3d 689 (Tenn. 2001)); Vt. Rule Evid. 503 (State v. Percy, 149 Vt.623, 548 A.2d 408 (1988)); WIS. STAT. § 905.04 (2001) (State v. Agacki, 226 Wis.2d 349, 595 N.W.2d 31 (1999)).
[12] Several states have addressed this concern and have passed laws to deal with the problem. The more limited solution is to include a crime-fraud exception in every privilege. In Florida, only the attorney-client privilege and the accountant-client privilege contain crime-fraud exceptions.

The more expansive, and I suggest the better, solution is to provide for a general exception to the privilege when necessary to the best interest of justice. For example, section 8.01-400.2 of the Code of Virginia provides for privileged communications between psychologists and clients, "provided ... that when the physical or mental condition of the client is at issue in such action, or when a court, in the exercise of sound discretion, deems such disclosure necessary to the proper administration of justice, no fact communicated to, or otherwise learned by, such practitioner in connection with such counseling, treatment or advice shall be privileged, and disclosure may be required." See also D.C.CODE ANN. § 14-307(b)(1) (2001) (provides a privilege for communications with a physician, surgeon or mental health professional except: "(b) This section does not apply to: (1)evidence in criminal cases where the accused is charged with causing the death of, or inflicting injuries upon, a human being, and the disclosure is required in the interests of public justice"); N.C. GEN.STAT. § 8-53.3 (2001) ("Any resident or presiding judge in the district in which the action is pending may, subject to G.S. 8-53.6 [absolute privilege for statements made during marital counseling where those statements are sought to be used in divorce or alimony actions], compel disclosure, either at trial or prior thereto, if in his or her opinion disclosure is necessary to a proper administration of justice"); W. VA. CODE § 27-3-1(b)(3)(2001)("(b) Confidential information may be disclosed: (3)Pursuant to an order of any court based upon a finding that said information is sufficiently relevant to a proceeding before the court to outweigh the importance of maintaining the confidentiality established by this section").
I respectfully suggest that the Florida Legislature consider amending those sections of the Florida Evidence Code that define Florida's evidentiary privileges to include language such as that set forth above. At the very least, the Legislature should consider adding a crime-fraud exception to all privileges provided by the Florida Evidence Code.
[13] The South Dakota Legislature has adopted a statute the language of which directly addresses this scenario. Section 19-2-3.2 reads as follows: "In any action or proceeding of a criminal nature, if the physical or mental condition of any person is in issue, any privilege under § 19-13-7 shall conclusively be deemed to be waived for the purpose of proving the commission of a criminal offense or for the purpose of impeaching the testimony of the patient, at trial, grand jury proceeding, or preliminary hearing, or for the purpose of discovery under Title 23A." S.D. CODIFIED LAWS § 19-2-3.2 (2001).
[14] Although the majority refuses to address this subject, in my judgment, the privilege has been waived as to this statement.
[15] Conducting in camera reviews to determine the viability of a claim of privilege is not new. Consider the following example: The state subpoenas a criminal defense lawyer to testify before a Grand Jury as to statements made to him by his client and counsel invokes the attorney-client privilege. When defense counsel is brought before a judge to compel answers, the state advises the court that it believes the statements made to counsel come within the crime-fraud exception and are therefore not privileged. The court would be within its rights to order counsel to reveal the substance of the communication in question to the court, in camera, so that it can make the necessary determination. See United States v. Zolin, 491 U.S. 554, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989); First Union Nat'l Bank v. Turney, 26 Fla. L. Weekly D2776, ___ So.2d ___, 2001 WL 1485659 (Fla. 1st DCA November 26, 2001); Little v. State, 754 So.2d 152 (Fla. 2d DCA 2000); Nat'l Sec. Fire & Cas. Co. v. Dunn, 705 So.2d 605 (Fla. 5th DCA 1997); Zanardi v. Zanardi, 647 So.2d 298 (Fla. 3d DCA 1994); Allstate Ins. Co., Inc. v. Walker, 583 So.2d 356 (Fla. 4th DCA 1991). Although this has been an accepted procedure for many years, the public's faith in the attorney-client privilege has not crumbled.