# Third District Court of Appeal

**State of Florida**

Opinion filed July 05, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D18-256
Lower Tribunal No. 11-6237A
_____

**J.B., a Minor, and the Guardian ad Litem Program,**
Petitioners,

vs.

**The State of Florida and Carmen Barahona,**
Respondents.

A Writ of Certiorari to the Circuit Court for Miami-Dade County, Nushin G. Sayfie, Judge.

Baker & McKenzie LLP, and Angela C. Vigil, for petitioner J.B., a minor; Thomasina F. Moore (Sanford), for petitioner Guardian ad Litem Program.

Eugene Zenobi, Criminal Conflict and Civil Regional Counsel, Third Region, and Philip L. Reizenstein, Assistant Regional Counsel, for respondent Carmen Barahona; Pamela Jo Bondi, Attorney General, and Melissa Roca Shaw and Brian H. Zack, Assistant Attorneys General, for respondent The State of Florida.

Before ROTHENBERG, C.J., and SUAREZ and SCALES, JJ.

ROTHENBERG, C.J.

J.B., a minor, and the Guardian ad Litem ("GAL") (collectively, "the Petitioners"), petition this Court for a writ of certiorari[1] seeking to quash the trial court's order compelling the release of J.B.'s mental health records for use by the Respondent, Carmen Barahona ("Barahona"), in her death penalty trial. Although the State of Florida took no position in the lower court, it now joins the Petitioners in seeking quashal of the trial court's order.

### FACTS AND PROCEDURAL HISTORY

This matter arises from the criminal prosecution of J.B.'s adoptive parents, Barahona and her husband, Jorge Barahona (collectively "the Barahonas"). On, or about, March 23, 2011, the Barahonas were charged with numerous counts, including the first degree murder of their adopted child, N.B., and the child abuse of their adopted child, V.B., who is N.B.'s twin brother.

Although J.B. lived in the Barahona home with the child victims, J.B. is not listed as a victim in the indictment. Prior to the charged offenses, N.B., V.B., and J.B. received psychological treatment at Citrus Health Network ("Citrus")—a non-profit community mental health center that serves mentally ill persons and their families. J.B. continued to receive psychological treatment at Citrus after the death of N.B. and the abuse of V.B. J.B. was approximately six or seven years old at the time.

_____

[1] In the alternative, the Petitioners seek to prohibit the production of J.B.'s mental health records.

On December 13, 2017, Barahona filed a motion to compel production of J.B.'s psychological records. In the motion, she contends that J.B. is an eyewitness to the events in question and may have evidence relevant to her defense. Importantly, neither the State nor the defense have listed J.B. as a witness. Further, there has been no attempt to depose J.B. during the seven years that this prosecution has been pending. Both J.B. and the GAL opposed Barahona's motion.

### THE TRIAL COURT'S ORDER

The trial court conducted a hearing on Barahona's motion on February 7, 2018. At the conclusion of the hearing, the trial court announced that it was going to grant the motion and order production of the records. The following day, prior to the issuance of a written order, J.B. filed an emergency motion for a stay. Prior to addressing J.B.'s motion for a stay, the trial court issued its order on Barahona's motion to compel production on February 9, 2018.

In its order, the trial court made the following findings: (1) J.B. was an eyewitness to many, if not all, of the events listed in the indictment; (2) the State and the defense need to review the records in order to adequately prepare for trial; (3) the need for the information outweighs any *possible harm* of disclosure; (4) the court has been "made generally aware" of J.B.'s mental and psychological fragility and, therefore; (5) disclosure of the "*potentially relevant*" records will

3

"*potentially safeguard*" her from the trauma of a competency hearing, deposition, and testifying. (emphasis added). Ultimately, the trial court concluded that prohibiting disclosure would actually harm J.B. because the parties would then attempt to depose her and/or subject her to a competency hearing. The trial court therefore concluded that there was "a legitimate and appropriate interest in the parties having access to [J.B.'s] mental health treatment record . . . ."

The order requires production under seal to both the State and the defense but prohibits disclosure to third parties, except for expert witnesses and legal staff. Later that same day, the trial court granted J.B.'s emergency motion and stayed the disclosure pending review by this Court. The instant petition followed.

## ANALYSIS

### Prohibition

As a preliminary matter, we address the Petitioners' request for a writ of prohibition. Writs of prohibition are narrow in scope, preventative in nature, and meant to be utilized with great caution. English v. McCrary, 348 So. 2d 293, 296 (Fla. 1977). Such relief may only be granted when a lower court lacks jurisdiction or is attempting to exceed its jurisdiction. Id. Here, the record is devoid of any such showing. Therefore, prohibition is not an available remedy to address the trial court's discovery order.

### Certiorari

Although a writ of certiorari is an extraordinary relief that is granted in very limited circumstances, see Lee v. Condell, 208 So. 3d 253, 256 (Fla. 3d DCA 2016) (citing Rousso v. Hannon, 146 So. 3d 66, 69 (Fla. 3d DCA 2014)), it is the proper vehicle to review discovery orders compelling the production of information that is protected by the statutory psychotherapist-patient privilege ("the privilege"). Cruz-Govin v. Torres, 29 So. 3d 393, 395 (Fla. 3d DCA 2010). In order to warrant relief, however, the order must depart from the essential requirements of law, causing material injury to the petitioner throughout the remainder of the proceedings below, leaving him/her without an adequate remedy on appeal. Martin-Johnson, Inc. v. Savage, 509 So. 2d 1097, 1099 (Fla. 1987), *superseded by statute on other grounds,* as stated in Williams v. Oken, 62 So. 3d 1129, 1134 (Fla. 2011). The latter requirements constitute irreparable harm, a condition precedent to invoking certiorari jurisdiction, which should be considered first. Lee, 208 So. 3d at 256.

We conclude that the trial court has departed from the essential requirements of law by ordering production of J.B.'s mental health records without first finding that an exception to the privilege applies. Section 90.503, Florida Statutes (2017), which codifies the privilege, specifically provides as follows:

(2) A patient has a privilege to refuse to disclose, and to prevent any other person from disclosing, confidential communications or records made for the purpose of diagnosis or treatment of the patient's mental or emotional condition, including alcoholism and other drug addiction, between the

5

patient and the psychotherapist, or persons who are participating in the diagnosis or treatment under the direction of the psychotherapist. This privilege includes any diagnosis made, and advice given, by the psychotherapist in the course of that relationship.

In defining the scope of the privilege, section 90.503(4) lists three exceptions to the privilege: (a) involuntary commitment proceedings; (b) court-ordered mental examinations; and (c) where the patient raises his or her own mental condition during the litigation. Importantly, however, the last exception applies when *the patient*, not the party seeking the information, places his or her mental health at issue. Cruz-Govin, 29 So. 3d at 396. In other words, the moving party cannot "pierce the privilege" by simply lodging a claim that raises an issue regarding the patient's mental health. Id. (citing Viveiros v. Cooper, 832 So. 2d 868, 869 (Fla. 4th DCA 2002)).

Because Barahona seeks to pierce J.B.'s statutory privilege regarding her psychological records, she has the burden of demonstrating that one or more of the enumerated exceptions apply. See Brown v. Montanez, 90 So. 3d 982, 986 (Fla. 4th DCA 2012) (holding that the party requesting discovery of privileged psychotherapist documents carries the burden of proving that an exception applies). Barahona, however, has not raised any of the enumerated exceptions, and none apply here. Because she has failed to raise or prove any exception, J.B. has the right to prevent disclosure of her records, and thus, the trial court departed

from the essential requirements of law by ordering disclosure. See State v. Famiglietti, 817 So. 2d 901, 903-04 (Fla. 3d DCA 2002).

Although, Barahona failed to raise any of the exceptions listed in section 90.503(4), she argues that she is nevertheless entitled to the records under sections 456.057 and 395.3025, Florida Statutes (2017), both of which she claims are exceptions to section 90.503. The former governs general medical records. The latter governs patient and personnel records. Based on our review of sections 395.3025, 456.057, and 90.503, and the relevant case law, we reject this argument.

First, subparagraph (2) of section 395.3025 explicitly states that section 395.3025 "*does not apply* to records maintained at any licensed facility the primary function of which is to provide psychiatric care to its patients, or to records of treatment for any mental or emotional condition at any other licensed facility . . . ." (emphasis added). Here, Citrus' own website describes its primary function as providing "psychiatric care" to its patients. See http://www.citrushealth.org/about. Additionally, subparagraph (4) of section 395.3025 provides:

> (4) Patient records are confidential and must not be disclosed without the consent of the patient or his or her legal representative, but appropriate disclosure may be made without such consent . . .
>
> (d) In any civil or criminal action, *unless otherwise prohibited by law*, upon the issuance of a subpoena from a court of competent jurisdiction and proper notice by the party seeking such records to the patient or his or her legal representative.

(emphasis added).

Section 456.057, which deals with *general* medical records, contains similar language. Specifically, subparagraph (7)(a) 3. precludes disclosure without a written authorization, except under certain listed circumstances, including the following:

> In any civil or criminal action, *unless otherwise prohibited by law*, upon the issuance of a subpoena from a court of competent jurisdiction and proper notice to the patient or the patient's legal representative by the party seeking such records.

(emphasis added). The privilege at issue, as codified by section 90.503, is the *otherwise prohibited by law* provision that precludes disclosure of J.B.'s psychological records. Thus, the statutes do not support Barahona's claim that she need not establish one of the enumerated exceptions in section 90.503(4) because she may compel disclosure under sections 395.3025 and 456.057.

The case law likewise does not support Barahona's claim. In Famiglietti, the plurality opinion issued by this Court, sitting *en banc*, concluded that: (1) there are only three exceptions to the privilege; (2) the privilege is not qualified in nature; (3) the privilege is not subject to a balancing test; and (3) due process protections do not entitle a defendant to pierce the privilege's protections. Famiglietti, 817 So. 2d at 903-04. We also note that the Fifth District Court of Appeal in State v. Roberson, 884 So. 2d 976, 980 (Fla. 5th DCA 2004), followed this Court's plurality opinion in Famiglietti and rejected, as this Court rejected in its plurality

8

opinion in Famiglietti, the due process balancing test applied by the Fourth District Court of Appeal in State v. Pinder, 678 So. 2d 410 (Fla. 4th DCA 1996).

We additionally conclude that, even if the more permissive or qualified test relied upon by the Fourth District was applied to the instant case, the trial court's order would still constitute a clear departure from established law, as Barahona's request for disclosure of J.B.'s confidential and privileged psychotherapist-patient records is exactly the type of fishing expedition that this Court, the United States Supreme Court, and our sister courts have strongly cautioned against.

In Jaffee v. Redmond, 518 U.S. 1, 9 (1996), the United States Supreme Court explained that "psychotherapist-patient privilege is rooted in the imperative need for confidence and trust" in which "the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears." Id. (quotation omitted). The mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment. Id. In making its findings, the Court emphasized that the protection of these confidential communications serves important public and private interests. Id. at 11-13. Significantly, the Court rejected, as the plurality opinion issued by this Court rejected in Famiglietti, the balancing test Barahona and the trial court suggest are applicable here. Id. at 17.

In doing so, the Court reasoned that, "[m]aking the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege. . . . [I]f the purpose of the privilege is to be served, the participants in the confidential conversation must be able to predict with some degree of certainty whether particular discussions will be protected." Id. at 17 (quoting Upjohn Co. v. United States, 449 U.S. 383, 392 (1981)). In other words, an uncertain privilege, or one which purports to be certain, but results in widely varying applications by the courts is little better than no privilege at all. Upjohn, 449 U.S. at 392.

Here, defense counsel merely argued that the privileged records *might* potentially be relevant. This argument falls short of establishing, within a reasonable probability, that the records actually contain information necessary to Barahona's defense. Again, J.B. is not one of the victims. The issue of her competency has not been officially raised by Barahona, and Barahona has not moved to depose J.B. Further, the State has made clear that it does not intend to call J.B. as a witness.

Nevertheless, the trial court reached the conclusion that the disclosure of these *potentially relevant* records would *potentially safeguard* J.B. from a competency hearing, deposition, and testifying. There is no record evidence that

supports such a finding. Whether J.B. would be less traumatized by disclosure of her confidential psychological records or by being evaluated and potentially being required to testify is something that has not yet been litigated. The only stated reason for the request was to determine whether J.B. was competent and to determine "where to go from there." Those reasons, without more, are insufficient to justify piercing the privilege. See e.g., S.P. v. Vecchio, 162 So. 3d 75, 79-80 (Fla. 4th DCA 2014) (quashing a lower court's order unsealing a child victim's mental health records where the defendant's sole basis for the request was to "see what had been left out" for purposes of challenging his sentence). Of equal importance, Barahona has failed to demonstrate—with any degree of specificity— just how J.B.'s *prior* mental health records are relevant to her *current* level of competency.

We also conclude that the improper disclosure of J.B.'s privileged communications with her mental health providers will result in irreparable harm. Indeed, Florida courts have consistently and repeatedly held that, absent evidence of a statutory exception or waiver, a trial court departs from the essential requirements of law when it enters an order compelling disclosure of communications or records in violation of the psychotherapist-patient privilege, and such disclosure results in irreparable harm. See Allstate Ins. Co. v. Langston, 655 So. 2d 91, 94 (Fla. 1995) (concluding that discovery of information protected

11

by a privilege may reasonably cause irreparable harm); see also Flood v. Stumm, 989 So. 2d 1240 (Fla. 4th DCA 2008); LaCaretta Restaurant v. Zepeda, 115 So. 3d 1091, 1092 (Fla. 1st DCA 2013).

## CONCLUSION

The trial court's order constitutes a departure from the essential requirements of law that will result in material and irreparable injury. J.B. is not a party to any proceedings in which a final appealable judgment shall be entered. Disclosure of any kind, including an *in camera* inspection, would let the proverbial cat out of the bag—and generate the same result. See Allstate Ins. Co., 655 So. 2d at 94. Neither harm can be properly remedied on appeal. Although Barahona's case is a death penalty case, that does not, without more, justify piercing the privilege. Nothing in the case law suggests that the death penalty implication immunizes Barahona from making the requisite showing of relevance, the applicability of an exception, and/or the existence of a waiver.

Accordingly, we grant the petition for writ of certiorari and quash the trial court's order granting discovery as to J.B.'s psychological/psychiatric treatment records.

Petition granted; order quashed.