906 So.2d 1209 (2005)
Judith L. BORCK; Kimberly Borck Pollard; Amity L. Borck; James L. Borck, Jr.; Susan B. Paulsson; Joel C. Karp & Gary Clayton, co-trustees the Chester E. Borck Revocable Trust; and Joel C. Karp, individually and for the benefit of BA-CEB Associates, a Delaware limited partnership, B.C.D. Associates, a Delaware Limited partnership, ASB CEB Administrative Trust, the Borck Family Foundation, a Connecticut non-stock corporation, Kimamijay Associates, a Delaware limited partnership, Chesterb Associates, LLC, a Delaware limited liability company, Petitioners,
v.
Abbie S. BORCK, Respondent.
No. 4D05-340.
District Court of Appeal of Florida, Fourth District.
July 20, 2005.
Robert L. Donald of Law Office of Robert L. Donald, Fort Myers, and Michael W. Connors of Michael W. Connors, P.A., North Palm Beach, for petitioners.
Jody H. Oliver of Gary, Dytrych & Ryan, P.A., North Palm Beach, for respondent Abbie S. Borck.
John P. Morrissey of Boyes & Farina, P.A., West Palm Beach, for respondent Chester E. Borck.
PER CURIAM.
Petitioners, who include family members of Chester Borck, as well as various entities in which family members hold some interest, seek a writ of certiorari to quash an order of the trial court requiring them to produce financial information, including their tax returns, in connection with two competing petitions to appoint a guardian of Mr. Borck. Because the order requires the production of private financial information from these non-party petitioners, we grant the petition.
Chester Borck is ninety-one years old and is a wealthy man. His first wife is deceased, but he has a daughter, Judith, and several grandchildren. For the past ten years he has been married to Abbie, his second wife, who is in her eighties. Chester's businesses were located in Connecticut and Joel Karp, a Connecticut attorney, has managed his financial affairs.
*1210 In March 2004, Karp and Chester's longtime assistant, Susan Paulsson, initiated a guardianship proceeding and petitioned for appointment of an emergency guardian for Chester. Chester is legally blind and hearing impaired. He also suffers memory deficits, probably resulting from Alzheimer's disease. He needs assistance with all of his major daily activities. The petition alleged that Abbie was interfering with the nursing staff's ability to care for Chester and verbally abusing him. Based upon the petition, the court appointed Deborah Barfield as an emergency temporary guardian of the person only. The court also appointed an attorney to represent Chester.
Following appointment of the emergency guardian of the person, Karp and Paulsson petitioned to have Chester's daughter, Judith, and Chester's grandson, James, appointed as co-guardians of the property. The petition also asked that the temporary guardian, Barfield, be appointed permanent guardian of the person. Abbie filed a competing petition requesting that she be appointed guardian of both the person and property of Chester.
Both petitions allege that one-half interests in two condominiums are the only property subject to the guardianship, as the remainder of Mr. Borck's substantial assets reside in a revocable trust of which Karp is a co-trustee with Mr. Borck. The trust, which apparently was in existence before the marriage of Chester and Abbie, provides that Abbie will receive interest income on $5,000,000 after Chester's death, but not less than $250,000 per year. In their pre-nuptial agreement, Chester also provided that Abbie would have the right to reside in their Lost Tree Village home for a period of one year after Chester's death, with all expenses to be paid by Chester's estate.
During the last five years, very substantial amounts have been transferred from the trust to various family members and corporations. The status of the trust assets thus is the core of the dispute in the trial court. Abbie alleges that a question exists as to whether these are gifts, and, if so, whether gift taxes were paid or remain a liability of the trust assets. As her attorney said at the hearing,
[Abbie's] in better health than him, he's got a provision for her in his trust, which is substantial, she is used to a Lost Tree lifestyle. . . . And what's going to happen is that these transfers weren't correct, and the gift tax liabilities or state tax liabilities eat up what's left, I'm going to have a woman who's not got an independent means of support, who needs to see what happened here.
The parties agreed to conduct mediation on the petition for appointment of the guardian, which was held in May 2004. The mediator's report states that they agreed to continue mediating.
As a result of that mediation, however, Mr. Karp, on behalf of the trust, agreed to produce documents for a CPA to review, the type and extent of which are at the source of the dispute. In a motion to enforce the "agreement," Abbie's counsel noted the substantial decreases in the assets of the trust account and explained that the mediation was continued pending an "audit" of the Borck assets, unlimited in its scope. The trustee had agreed to pay the cost of the CPA review. However, upon receipt of the auditor's engagement letter, which requested a retainer of $10,000, the trustee refused to sign the letter, contending that the audit was limited to the trust assets and did not extend to various other entities and persons to whom trust assets were transferred. Attached to the motion were the handwritten notes from mediation that state "Jody [Abbie's counsel] and Jack [Karp] agree to CPA to *1211 go to Connecticut to analyze books and records-no limitations."
At the non-evidentiary hearing on this request, Karp, as trustee, explained that he had agreed to provide only trust documents for the CPA to review, but not documents of other entities and individuals with whom he had attorney/client relationships and were not parties to this guardianship. Nevertheless, without testimony and based upon the notes of the agreement arrived at in mediation, the court ordered the CPA to conduct a review of the trust assets and ordered production of a variety of documents, including the financial records and income tax returns for all entities on the cash ledger reports of the trust beginning in 1999. The attorney's letter that contained these requests was attached to the order. The order noted that other items may also be requested.
This order led to the petition for certiorari, filed by Borck's children and grandchildren, as well as various other entities, all of whom hold some interest in the trust assets or transfers and thus were subject to the broad order demanding financial records and tax returns. Because the order requires financial information from non-parties to the guardianship proceedings, the petitioners have alleged irreparable harm in the invasion of their privacy rights. See Friedman v. Heart Inst. of Port St. Lucie, Inc., 863 So.2d 189 (Fla.2003); Ross v. Fly Me to the Moon, LLC, 818 So.2d 681 (Fla. 4th DCA 2002); Voytish v. Ozycz, 695 So.2d 1301 (Fla. 4th DCA 1997).
Article I, section 23, of the Florida Constitution protects the financial information of persons if there is no relevant or compelling reason to compel disclosure. See Friedman, 863 So.2d at 194; Mogul v. Mogul, 730 So.2d 1287, 1290 (Fla. 5th DCA 1999). Here, the trial court ordered production of non-party financial information without any evidentiary inquiry as to its relevance to the petition for appointment of the guardian of the property. The court, relying entirely on Abbie's council's representation, simply enforced what Abbie's counsel referred to as an "agreement," without even taking testimony from the parties as to the scope of that agreement. Moreover, even if Karp had agreed to unlimited discovery of the trust documents, there was no showing in the record that Karp had the authority to agree, on behalf of these various individuals and entities, to discovery of their financial information. Because the order broadly permitted discovery of the financial records of non-parties without showing a compelling reason for their disclosure, the court departed from the essential requirements of law.
We therefore grant the writ and quash the order of the trial court compelling this broad order of discovery into the activities of the trust, without prejudice to the court addressing the issue in an evidentiary hearing.
STEVENSON, C.J., and GUNTHER, J., concur.
WARNER, J., concurs specially.
WARNER, J., concurring specially.
I agree with the majority opinion and write only to add that the discovery relating to the activity of the trust seems very premature at this point of the litigation and a needless expenditure of the resources of the ward's estate, the trust estate, and court time. It has already been over a year since the petition for appointment of a guardian was made, and to date no guardian has been appointed. Although the trust would not be part of the guardianship assets, the examination of the activities of the trust may very well be an obligation of the guardian if the ward's income has been significantly reduced as a *1212 result of trust transfers. However, it is premature to litigate over what has happened to the trust estate before a guardian is appointed.
I liken this to a complaint seeking accounting of a business, where discovery as to the accounting is deferred until the preliminary issue of the right to an accounting is settled. See Charles Sales Corp. v. Rovenger, 88 So.2d 551 (Fla.1956). Where a court grants extensive discovery of business records in such a suit before the right to an accounting has been established, we have granted certiorari to quash such orders. See Picerne Dev. Corp. of Fla. v. Tasca & Rotelli, 635 So.2d 149 (Fla. 4th DCA 1994). Here, as in the accounting, the right to the guardianship as well as the appointment of the guardian should be the prerequisite to such extensive discovery. It is the guardian's duty to investigate and preserve the property of the ward, not that of interested persons. Therefore, discovery regarding the details of the ward's assets before appointment is premature.
Abbie and the attorney appointed to represent Borck until the appointment of a guardian suggest that this information is necessary to determine whether the daughter should be appointed guardian. I do not see the necessity of obtaining the tax returns from the individuals or even the entities who received distributions from the trust to determine whether the daughter should be appointed guardian of the property. If she has a conflict of interest or there are other reasons to disqualify her, then the court should not appoint her guardian. However, that determination can be made at a hearing on the issue, which hopefully will proceed without further delay. An impartial guardian of the property, looking out for the best interests of the ward, not those of the trust beneficiaries or the wife, is clearly needed in this case.[1]
NOTES
[1] An issue of whether Borck executed a durable power-of-attorney in favor of his daughter, which should be given effect over the appointment of the guardian, was raised, but the trial court determined that an evidentiary hearing was necessary to evaluate the instrument as well as the propriety of the appointment. I agree that an evidentiary hearing was required.