DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT
*July Term 2014*

**S.P.,** by and through her natural guardian **R.P.,**
Petitioner,

v.

**ANTHONY VECCHIO** and the **STATE OF FLORIDA,**
Respondents.

No. 4D14-14

[October 1, 2014]

Petition for writ of certiorari to the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Charles E. Burton, Judge; L.T. Case No. 502011CF006513AMB.

Roberto Martinez and Latoya C. Brown of Colson Hicks Eidson, Coral Gables, for petitioner.

Pamela Jo Bondi, Attorney General, Tallahassee, and Laura Fisher, Assistant Attorney General, West Palm Beach, for respondent State of Florida.

CIKLIN, J.

S.P., a non-party child victim in a criminal case against Anthony Vecchio, by and through her natural guardian, seeks certiorari review of a non-final order granting Vecchio's motion to unseal S.P.'s medical records. We granted the petition on May 28, 2014, and now follow with this opinion. Because compulsory disclosure of the records would violate both S.P.'s constitutional right to privacy and her psychotherapist-patient privilege, we grant S.P.'s petition and quash the trial court's order requiring the child victim to unseal her medical records.

Background

Vecchio was charged with lewd or lascivious battery, lewd or lascivious molestation, and battery on a child. A security guard working the night shift at a Boca Raton condominium encountered S.P., fourteen years of age at the time, who claimed she had escaped from someone named Tony.

The guard would later state in a deposition that he saw video footage of Vecchio kissing S.P. in one of the condominium's elevators. S.P. was transported to a child protection team (CPT)[1] for a sexual battery exam and a doctor with the CPT recovered semen from S.P.'s vaginal area which was found to have come from Vecchio. The genital examination also produced evidence of scant bleeding and blunt force trauma which was consistent with S.P.'s version of events. During the time of the exam and into the next morning, a Boca Raton Police Department detective conducted an interview with Vecchio during which he admitted to performing sexual acts with S.P. When pressed about S.P.'s age, Vecchio denied having knowledge of her age although he guessed it to be between eighteen and twenty years. Vecchio admitted to penetrating the victim with his finger.

While the criminal case against Vecchio was pending, the state filed the declaration of Dr. Richard Jackson for the purpose of establishing S.P.'s unavailability for Vecchio's then upcoming criminal trial. For the preceding ten months, Dr. Jackson had been treating S.P. at a Utah residential treatment center for girls. S.P. had been making progress, but upon learning that the prosecution of Vecchio was still ongoing, suffered a severe relapse which encompassed active suicidal ideation. In his declaration Dr. Jackson stated:

> As a result, I decided along with my colleagues at [the treatment center] that S.P. immediately had to be admitted in-patient at a neuropsychiatric hospital in the State of Utah for more intensive treatment.

Dr. Jackson also noted that S.P. was suffering from depressive disorder

---

[1] CPTs were created by the Legislature in 1984. Ch. 84-226, Laws of Fla.

> The Children's Medical Services Program in the Department of Health shall develop, maintain, and coordinate the services of one or more multidisciplinary child protection teams in each of the service districts of the Department of Children and Families. Such teams may be composed of appropriate representatives of school districts and appropriate health, mental health, social service, legal service, and law enforcement agencies. The Department of Health and the Department of Children and Families shall maintain an interagency agreement that establishes protocols for oversight and operations of child protection teams and sexual abuse treatment programs.

§ 39.303, Fla. Stat. (2014).

NOS, anxiety disorder NOS, eating disorder NOS, as well as nightmares. As a result of Dr. Jackson's declaration, the state removed S.P. from its witness list as to its prosecution of Vecchio, with an intent to rely on DNA evidence and Vecchio's statement to police.

Vecchio moved to allow for issuance of subpoenas duces tecum for S.P.'s records, including her medical, psychiatric, pharmacy, hospital, and school records. In support of his motion, Vecchio argued that he had come into possession of information which suggested that, prior to the incident alleged, S.P. had been on medication, suffered from depression and an eating disorder, and had been hospitalized twice. The state objected on the grounds of irrelevancy, although it conceded that S.P. was using Prozac the night of the incident, which might, the state agreed, have some relevance with respect to sentence mitigation. The trial court granted the motion to the extent that it would conduct an in-camera review. During the in-camera review, the trial court found one relevant item[2] and made it available to the defense after which the records were re-sealed. Shortly before Vecchio's trial, the defense filed a motion to have S.P.'s medical records unsealed, which the trial court denied without prejudice.

On December 14, 2012, Vecchio entered an open plea of guilty to lewd or lascivious battery, lewd or lascivious molestation and battery on a child. Prior to the imposition of sentence, a sentencing memorandum was prepared and offered by the state. The memorandum noted the emotional distress the victim continued to suffer as a result of the incident. In addition to its memorandum, the state introduced testimony from S.P.'s sister and father who reported, among other things, that S.P. had intentionally run into traffic while at the Utah facility; that she suffered from nightmares and eating disorders; and that she would call her father at all hours of the day and night telling him that she was contemplating self-inflicted injury. The trial court sentenced Vecchio to 96 months in prison followed by 84 months of supervision. The sentence represented a downward departure from the 185 months that Vecchio scored under the sentencing guidelines.

After sentencing, Vecchio appealed from his judgment and sentence. Before filing his initial brief, however, Vecchio moved for an extension of time and asked this court to relinquish jurisdiction so he could request that the trial court unseal the victim's medical records for purposes of raising a discovery violation issue on appeal. We granted his unopposed motion to relinquish jurisdiction to enable Vecchio to file a motion to

---

[2] None of the pleadings or appendix items submitted by the parties contain or otherwise describe the one item found to be relevant by the trial court.

unseal S.P.'s medical records.

In accordance with our relinquishment order, Vecchio filed the instant motion to unseal S.P.'s medical records. While arguing his motion before the trial court, Vecchio asserted that if he had been given access to "complete information" before he voluntarily entered his plea, he could have made a more informed choice regarding resolution of the criminal prosecution against him including a specific plea offer from the state.[3] Vecchio argued to the trial court that if he had known all of S.P.'s mental health information cited by the state, "his decision would have been different," although Vecchio offered no specificity in that regard. Vecchio also asserted that because he was denied access to S.P.'s complete medical record files, he was unable to properly prepare for sentencing. Vecchio suggested to the trial court that he sought review of S.P.'s records not necessarily to observe what was contained therein but rather to determine what was not included in the private records and yet offered by the state through the testimony of S.P.'s sister and father. (As Vecchio put in his motion to unseal, "to see what has been left out on purpose."). Should such exclusions be apparent, Vecchio argued, then a discovery violation would have occurred pursuant to *Brady*.[4]

Through her natural guardian, S.P. filed her "opposition to motion to unseal medical records," arguing that the records are privileged and private. She urged the trial court to deny Vecchio's motion, particularly because the court had already conducted a thorough in-camera inspection of S.P.'s private and highly sensitive records and concluded all but one item was irrelevant.

In a written order, the trial court granted Vecchio's motion to unseal S.P.'s medical records and the instant petition for writ of certiorari followed.

## Analysis

Certiorari review is available to non-parties under certain circumstances. *Borck v. Borck*, 906 So. 2d 1209, 1211 (Fla. 4th DCA 2005) (quashing order compelling production of financial information of non-parties). Additionally, certiorari is a proper vehicle to review orders compelling the production of records that are protected by the psychotherapist-patient privilege. *Smith v. Smith*, 64 So. 3d 169, 170 (Fla.

---

[3] The terms of any proposed plea agreement offered by the state are not included in the record provided to us.
[4] *Brady v. Maryland*, 373 U.S. 83 (1963).

4

4th DCA 2011) (citations omitted).

S.P. argues that her medical records are protected from disclosure by both constitutional and statutory rights to privacy, as well as the psychotherapist-patient privilege, and as such, the trial court departed from the essential requirements of the law by ordering their disclosure without compelling reason. She contends that the disclosure will result in irreparable harm to her, not remediable by appeal. Vecchio argues that disclosure of the medical records is compelled by the potential existence of a *Brady* violation.

We agree with S.P. Her records are protected, and although confidential clinical records may be disclosed where the court determines there is good cause, *see* section 394.4615(2)(c), Florida Statutes (2013), there is no such good cause here.

Florida law is clear that a person's medical records enjoy a confidential status. First, the right to privacy contained in Article I, section 23 of the Florida Constitution has been extended to preclude dissemination of one's medical records. *See State v. Johnson*, 814 So. 2d 390, 393 (Fla. 2002). Second, confidential medical records are protected from disclosure as provided in Florida statutory law. *See* § 456.057(7)(a), Fla. Stat. (2013) (providing that, with few exceptions, medical records may not be furnished to any person other than the patient or the patient's legal representative or other treating health care providers, except upon written authorization of the patient). Third, section 90.503(2) provides that under the psychotherapist-patient privilege, a patient has a privilege to refuse to disclose confidential information or records made for the purpose of diagnosis or treatment of mental conditions, including any diagnoses made by the psychotherapist. There are only three enumerated exceptions to the psychotherapist-patient privilege; it does not apply (1) during involuntary commitment proceedings, (2) when there is a court-ordered mental examination, or (3) when the patient, or a party after the patient's death, raises and relies on the issue of the patient's mental condition in litigation as part of any claim or defense. § 90.503(4), Fla. Stat. (2013). None of those exceptions apply in this case.

This court has consistently and repeatedly held that, absent evidence of an applicable statutory exception or waiver, a trial court departs from the essential requirements of law when it enters an order compelling disclosure of communications or records in violation of the psychotherapist-patient privilege. *See Smith*, 64 So. 3d at 170-71 (citing *Urbanek v. Urbanek*, 46 So. 3d 1235 (Fla. 4th DCA 2010); *Cruz-Govin v. Torres*, 29 So. 3d 393, 395 (Fla. 3d DCA 2010)); *Palm Beach Cnty. Sch. Bd.*

*v. Morrison*, 621 So. 2d 464, 468 (Fla. 4th DCA 1993).

The fact that S.P.'s ongoing psychological issues were mentioned during Vecchio's sentencing proceedings is not good cause for disclosure of the records. Indeed, it is reasonable that the offenses perpetrated upon S.P. by Vecchio *would result* in psychological problems for the victim. *See Floyd v. State*, 18 So. 3d 432, 447 (Fla. 2009). In *Floyd*, the defendant had been convicted of fatally shooting his mother-in-law. At trial, two of Floyd's step-children testified that they witnessed Floyd shooting the victim. One of the issues raised by Floyd on appeal centered around the trial court's denial of his requests to subpoena the counseling records of the children witnesses. *Id.* at 446. The Court noted that despite the psychotherapist-patient privilege, section 394.4615(2)(c) permits court-ordered disclosure for good cause. Nonetheless, the Court found good cause *not to exist.* "Rather, it is completely reasonable, if not expected, for children who witnessed the murder of their grandmother to have psychological issues arising from the event." *Id.* at 447.

Based on our review of the proceedings below, the disclosure of S.P.'s medical records, like in *Floyd*, would only confirm the inevitable trauma caused by the underlying event. S.P.'s mental health issues have been thoroughly outlined in Dr. Jackson's declaration. Therefore, the statements made by S.P.'s family members during sentencing merely echoed the obvious traumatic effect that Vecchio's lewd molestation could be expected to have on this minor.

Finally, Vecchio argues that the reason he seeks to invade S.P.'s privacy is to prove a *Brady* violation, which, he asserts, may have impacted his decision to go to trial or enter a plea. In order to show there has been such a violation however, "the defendant has the burden to show (1) that favorable evidence, either exculpatory or impeaching, (2) was willfully or inadvertently suppressed by the State, and (3) because the evidence was material, the defendant was prejudiced." *Hurst v. State*, 18 So. 3d 975, 988 (Fla. 2009) (citing *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)).

Vecchio fails to meet his burden. And in the event that we are understating the merits of Vecchio's argument, Judge Burton's thorough in-camera inspection of the records in question has acted as a solid safety net. His independent in-camera inspection assures us that no exculpatory or relevant evidence was impermissibly withheld. Additionally, S.P. is not an agent of the state, and assuming for the sake of argument that she or her doctors did withhold relevant records, the state—under the facts of this case—would not be liable for a willful or inadvertent suppression of

discovery.[5]  Finally, Vecchio was not prejudiced.  Our own review of the record below suggests that nothing contained within the private and confidential medical files of the victim would be of any significance to Vecchio's defense, particularly because his conviction was based on independent evidence and the requisite factual basis underlying his guilty plea.

The crimes to which Vecchio pled guilty are strict liability crimes and the state is not required to prove a lack of victim consent, the victim's motive, or mistake as to the victim's age.  The state was required to prove the victim's age and that Vecchio engaged in sexual acts with her.  The state's efforts proved successful with overwhelming evidence of Vecchio's guilt. Based on the record before us, we specifically find that S.P.'s medical records would be unavailing to Vecchio—disclosure will achieve nothing.

While certain specifics of the medical records may remain unknown out of respect for the victim's psychotherapist-patient privilege, it has been well documented that the victim/patient, S.P., was and has been suffering from certain mental health issues, as Dr. Jackson meticulously detailed. If we were to permit the trial court's order to stand, S.P.'s privacy rights would be irreversibly violated.

We grant the victim's petition and quash the trial court's order to unseal S.P.'s medical records.

*Petition granted.*

WARNER and KLINGENSMITH, JJ., concur.

*        *        *

***Not final until disposition of timely filed motion for rehearing.***

---

[5] "It is well-settled that the state is charged with constructive knowledge and possession of evidence withheld by state agents, including law enforcement officers." *Tarrant v. State*, 668 So. 2d 223, 225 (Fla. 4th DCA 1996) (citations omitted).  *See also Lewis v. State*, 22 So. 3d 753, 757-58 (Fla. 4th DCA 2009) (holding that where the defendant was not aware of a statement a state witness made during trial, the court's *Richardson* hearing should have included an inquiry into whether "the state or the police ever possessed [the witness'] statement," as the state is charged with constructive knowledge of evidence in the possession of state agents).